## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

MICHAEL S. ARGENYI,      )
                           )
           **Plaintiff,**      )          **8:09CV341**
                           )
      **V.**                 )
                           )
**CREIGHTON UNIVERSITY,**      )     **MEMORANDUM AND ORDER**
                           )
          **Defendant.**      )
                           )

In this suit, Plaintiff Michael Argenyi alleges that Defendant Creighton University violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, by failing to provide him with effective means of communication or reasonable accommodations in order to fully participate as a first-year medical student.  (Filing 26.)  Plaintiff and Defendant have each filed motions seeking to compel the other to produce certain requested documents.  (Filings 158 & 161.)  The court will consider each of these motions below.

### 1.   Defendant Creighton University's Motion to Compel

Plaintiff instituted this action on or about September 24, 2009.  (Filing 1.)  On or about September 24, 2010, the United States Department of Justice ("DOJ") notified Defendant that Plaintiff had filed a complaint with its Disability Rights Section alleging that Defendant violated the ADA.  (Filing 160-2.)  Defendant also received notice that the DOJ was investigating Plaintiff's claim.  On December 1, 2010, the parties and attorneys for the United States met for settlement discussions.  (Filing 174-3.)  At that time, the parties, as well as the lawyers for the United States, signed a confidentiality agreement protecting from disclosure communications relating to settlement discussions.  (Filing 174-4.) Settlement discussions continued until February 18, 2011, when Defendant sent an email to counsel for both the Plaintiff and the United States stating that it was rejecting "any and all settlement offers made by the Plaintiff and/or United States and withdraws any offer of settlement to the Plaintiff and/or United States."  (Filing 196.)

On February 22, 2011, the DOJ sent Defendant a letter expressing surprise at Defendant's "decision to reject the United States' most recent settlement offer and withdraw from settlement negotiations" since "the parties appeared to be quite close to resolving this matter without further litigation."  (Filing 174-2.)  The DOJ further advised that because Defendant "has made clear that it is no longer interested in pursuing a settlement of Michael Argenyi's allegations, the United States is resuming its investigation of his allegations that the University has violated Title III of the Americans with Disabilities Act . . ."  (Id.)  The DOJ has not, however, informed Defendant that it believes there is evidence supporting a finding that Defendant violated the ADA and, according to Defendant, it has not been contacted by the DOJ since February, 2011.  (Filing 160.)

On February 24, 2011, Defendant served its Second Set of Requests for Production of Documents on Plaintiff.  Among other things, Defendant asked Plaintiff to produce "[a]ll documents Plaintiff and/or his representatives submitted to or received from the United States Department of Justice and/or any other state or federal governmental agency regarding Creighton University including, but not limited to, complaints, letters, electronic mail, or any other written communication."  (Filing 160-2.)  Plaintiff served his responses to Defendant's Second Set of Requests for Production of Documents on March 28, 2011.  Plaintiff objected to the request detailed above ("Request No. 2"), stating:

> Plaintiff objects to Request No. 2 because it seeks documents protected by the "common interest doctrine," recognized by this circuit in the case of In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994) (citing Supreme Court Standard 503(b): "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, . . . (3) by him or his lawyer to a lawyer representing another in a matter of common interest . . ."  Request No. 2 calls for documents created after the commencement of this lawsuit and are protected under said doctrine.  Plaintiff also objects to Request No. 2 as it is overly broad, unduly burdensome and vague and seeks documents protected by attorney work product doctrine.

(Id.)

Through its present motion, Defendant seeks an order compelling Plaintiff to produce the documents responsive to Request No. 2. Defendant argues that, contrary to Plaintiff's assertion, the common interest doctrine is inapplicable and, additionally, that Plaintiff has waived any objections by refusing to provide a privilege log.

The common interest doctrine shields protected attorney-client and work product privileged documents from discovery, despite their disclosure to a third-party, when that third-party has a common interest in the litigation. Stated differently, "[t]he common interest doctrine is an exception to the rule that voluntary disclosure of confidential, privileged material to a third party waives the privilege. *Pucket v. Hot Springs School Dist. No. 23-2,* *239 F.R.D. 572, 582 (D.S.D. 2006)* (citing *In re Grand Jury Subpoena Duces Tecum*, *112* *F.3d 910, 922 (8th Cir. 1997)*). The Eighth Circuit has recognized the common interest doctrine as follows:

> If two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons.

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997).

Having considered the circumstances presented here, it appears probable that the common interest doctrine has some applicability. Although the United States has not formally intervened in this case, it has played a relatively significant role in this lawsuit. The United States has undertaken an investigation into Plaintiff's claims and has also engaged in settlement discussions with the stated purpose of resolving Plaintiff's complaint. The fact that the United States is not an official party to this lawsuit does not automatically preclude Plaintiff from invoking the common interest privilege. *See United States v. Gumbaytay*, 2011 U.S. Dist. LEXIS 47142, Civ. A. No. 2:08cv573-MEF at *10-12 (M.D. Ala. Jan. 19, 2011) (recognizing that "courts have extended the common interest rule beyond parties and clients alone, to non-parties in current litigation and even potential co-parties to prospective litigation.") (citations omitted). *See also Matter of Grand Jury Subpoena Duces Tecum Dated*

3

*November 16, 1974*, 406 F.Supp. 381, 389 (D.C.N.Y. 1975 ) (concluding that "the attorney-client privilege covers communications to a prospective or actual co-defendant's attorney when those communications are engendered solely in the interests of a joint defense effort."); *U.S. v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("'[C]ommon interests' should not be construed as narrowly limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary of the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts."). The United States is authorized by statute to bring an action in federal court to enforce Title III of the ADA. *See* 42 U.S.C. § 12188(b)(1)(B). Given the United States' interest, involvement and participation in attempts to resolve this matter, it is certainly reasonable for Plaintiff to consider the United States a potential co-party to this suit and, also, to have the expectation that communications with the United States will remain confidential.

Nevertheless, the United States' status as a potential co-party does not shield all of the documents exchanged between Plaintiff and the United States from discovery. First, documents exchanged between Plaintiff and the United States before the United States began its investigation into Plaintiff's claims cannot be said to be protected by the common interest doctrine. At the time of initial contact, there could have been no expectation of confidentiality because the United States was not actively pursuing an investigation against Defendant. *See Reed v. Advocate Health Care*, 2007 U.S. Dist. LEXIS 56245, Case No. 06C3337 (N.D. Ill. Aug. 1, 2007) (finding that the common interest doctrine did not apply where the government was not actively pursuing an investigation and Plaintiff was communicating with the government "in order to stimulate beneficial official  action . . ." (quotation omitted)); *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F.Supp. 591 (S.D.N.Y. 1998) (holding that plaintiff waived work-product protection by offering the materials to various government agencies for purposes of persuading the agencies to institute suit against defendants, noting that "the plaintiff and the government authorities were neither adversaries nor allies when the documents were submitted). Second, unless a communication or document is protected by the attorney-client privilege or work product doctrine, the common interest doctrine does not apply. *In re Commercial Money Center, Inc., Equipment Lease Litigation*, 248 F.R.D. 532 (N.D. Ohio E. Div. 2008). Because Plaintiff has not produced a privilege log, Defendant is unable to discern whether the requested documents are, in fact,

protected by the attorney-client privilege or work product doctrine. Without this information, any protection offered by the common interest doctrine cannot be confirmed.

Based on the above, the court will grant Defendant's motion to compel, in part. Plaintiff will be ordered to produce the documents responsive to Defendant's request which were exchanged between Plaintiff and the United States before September 24, 2010, the approximate date that Defendant learned that the United States was investigating Plaintiff's allegations. Plaintiff will also be ordered to produce a privilege log describing, with the particularity required by Fed.R.Civ.P. 26, each of the remaining documents alleged to be shielded from disclosure by the common interest doctrine. Should Defendant dispute whether any of the listed documents are protected by the attorney-client privilege or the work product doctrine, as is necessary for the common interest doctrine to apply, it may renew its motion to compel production of these documents.

## 2.      *Plaintiff Michael Argenyi's Motion to Compel*

Plaintiff propounded a document request for "[a]ll documents, notes, e-mails, agendas or summaries of Medical Education Team Meetings where Plaintiff's request for auxiliary aids and services were discussed." (Filing 163-4.) In response to this request, Defendant provided some emails and agendas from Medical Education Team Meetings ("METM").[1] Defendant did not, however, disclose notes from the MEMT meetings because, according to Defendant, the notes are protected by the attorney-client privilege and work product doctrine. Specifically, Defendant maintains that the notes are privileged because, during the MEMT meetings, legal advice from counsel was sought regarding the impact of Plaintiff's accommodation requests. Defendant claims that the notes contain direct references to legal counsel's advice.

Plaintiff has also requested that Defendant produce "[a]ll documents that relate or refer in any way to the provision of auxiliary aids for Michael S. Argenyi, including but not limited

---

[1] The MEMT was the committee that responded to Plaintiff's requests for accommodation, considered the documentation supporting his requests and determined what accommodations would be provided.

to committee notes, memorandum, meetings minutes, determinations, billing, times and dates, including but not limited to those sent to or received from Dr. Michael Kavan and Wade Pearson." (*Id.*)   In response to this request, Defendant produced documents that Plaintiff submitted as part of his request for auxiliary aids and services; correspondence between Defendant and Plaintiff and references that Plaintiff provided; and internal correspondence scheduling the provision of the FM system and arranging for the captioning of a video. Defendant maintains that it provided all documents responsive to this request, with the exception of email communications between MEMT members/Defendant's president and legal counsel and memoranda prepared by Defendant's in-house legal counsel regarding the impact of Defendant's decisions regarding Plaintiff's requests for accommodation.

Defendant produced a privilege log which identifies thirty-three documents that are allegedly protected by the attorney-client privilege and/or work product doctrine. (Filing 163-8.)  Plaintiff complains that the privilege log is inadequate and does not allow Plaintiff to conduct an independent evaluation of the merits of Defendant's objections.  Plaintiff also argues that Defendant's privilege log does not identify and describe every document responsive to Plaintiff's discovery requests.

Through his discovery requests, Plaintiff is particularly seeking the production of all MEMT-related documents which pertain to Plaintiff and his requests for accommodation. Plaintiff contends that these documents are necessary for him to discern the reasons for Defendant's decision to deny his requests for accommodation and the information considered by the MEMT in reaching its determinations.  Plaintiff argues that he has been unable to obtain this information from other sources.  Plaintiff points to the fact that he conducted a Fed. R. Civ. P. 30(b)(6) deposition seeking to discover information related to the MEMT's handling of Plaintiff's requests for accommodation. Defendant designated its Associate Dean, Dr. Michael Kavan, who was chair of the MEMT committee in 2009 when Plaintiff first requested accommodation.  At the deposition, Dr. Kavan testified that he is unable to remember all of the evidence the MEMT considered in making its decision to deny Plaintiff's requests.  (Filing 197-1.)  Plaintiff believes these details are memorialized in the MEMT meeting notes and other related documents.

6

The court concludes that an *in camera* inspection of the thirty-three listed documents is necessary to allow the court to assess the applicability of the attorney-client privilege and work product doctrine. Many of the listed documents were prepared by Amy Bones or include her as a recipient. Although Ms. Bones serves as Defendant's in-house legal counsel, she is also Defendant's vice-president. Thus, the court is unable to evaluate the merits of the claimed privileges without inspecting the documents and determining in what capacity or why Ms. Bones authored or received the documents. *See In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) (noting that when the attorney at issue was a company vice-president and had responsibilities outside the attorney's sphere, the company could claim attorney-client privilege "only upon a clear showing that [the attorney] gave [the advice] in a professional legal capacity."); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer.") Further, if necessary and appropriate, it may be possible for some of the documents, including minutes from meetings at which Ms. Bones was present, to be redacted so as to allow for production.

Further, the court agrees that, based on the testimony elicited by Plaintiff, it is quite possible that there are documents responsive to Plaintiff's request that have neither been produced by Defendant, nor identified as privileged. Plaintiff has pointed to deposition testimony which indicates that the MEMT meets every two weeks pursuant to a schedule devised a year in advance. (Filing 163-5.) This deposition testimony also indicates that for each of these meetings, notes/minutes are taken and agendas outlining the topics to be discussed are prepared. (*Id.*) Nevertheless, the only documents identified on Defendant's privilege log are from MEMT meetings that took place after the MEMT denied Plaintiff's accommodation requests. (Filing 163-8.) The MEMT, the body responsible for making decisions regarding Plaintiff's request, very likely addressed the matter at other, earlier meetings, yet no notes, minutes or other similar documents relating to these other MEMT meetings have been produced or identified. (Filing 176-1.) Therefore, the court will order Defendant to conduct further investigation into the existence of these documents and, to the extent that additional documents exist, Defendant shall supplement its responses and/or privilege log accordingly.

7

**IT IS ORDERED:**

1.      Defendant's Motion to Compel (filing 158) is granted, in part.  Plaintiff shall produce all documents responsive to Defendant's discovery request which were exchanged between Plaintiff and the United States before September 24, 2010.

2.      On or before August 24, 2011, Plaintiff shall provide Defendant with a privilege log describing, with the particularity required by Fed.R.Civ.P. 26, the remaining documents Plaintiff maintains are shielded from disclosure by the common interest doctrine.  Should Defendant dispute whether any of the documents listed on the log are protected by the attorney-client privilege or the work product doctrine, it may renew its motion to compel production of these documents.  Any such motion to compel must be filed on or before August 31, 2011.

3.      On or before August 17, 2011, Defendant shall produce to the court the thirty-three documents listed on Defendant's privilege log for *in camera* inspection. After reviewing the documents, the court will enter an order on Plaintiff's motion to compel.

4.      Defendant shall conduct further investigation into the existence of documents responsive to Plaintiff's discovery requests, and, in particular, MEMT meeting notes and agendas.  To the extent that other documents exist, Defendant is ordered to supplement its discovery responses/privilege log accordingly. Defendant shall provide the court with a status report detailing the results of its inspection on or before September 9, 2011.

**DATED August 10, 2011.**

                                        **BY THE COURT:**

                                        **S/ F.A. Gossett**
                                        **United States Magistrate Judge**

8