IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL S. ARGENYI, | ) | CASE NO. 8:09CV341 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| CREIGHTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Renewed Motion in Limine to Exclude Expert Testimony (Filing No. 248). Having considered the parties' briefs (Filing Nos. 249, 252, 256) and indexes of evidence (Filing Nos. 250, 256-2) the Court concludes that the Motion in Limine will be granted in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael S. Argenyi is a medical student at Creighton University who has a hearing disability. He brought this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Argenyi does not know sign language, but relies primarily on "cued speech," which uses hand signals to represent sounds, and Communication Access Real-time Transcription ("CART"), a system which transcribes spoken words into text on a computer screen. Before starting medical school, he received a bilateral cochlear implant, and his physicians recommended that he be provided with access to CART, a cued speech interpreter, and an FM system that would direct sound to his cochlear implants. Creighton University provided some, but not all, of the accommodations Argenyi requested.

This Court granted summary judgment in favor of Creighton, and Argenyi appealed. The United States Court of Appeals for the Eighth Circuit reversed, concluding that genuine

issues of material fact remained "as to whether Creighton denied Argenyi an equal opportunity to gain the same benefit from medical school as his nondisabled peers by refusing to provide his requested accommodations." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 451 (8th Cir. 2013).

The matter is set for jury trial on August 20, 2013.  Creighton has moved, in limine, to preclude the testimony of three expert witnesses designated by Argenyi: Gail Peoples, Margaret Tyska Heaney, and Richard Okamoto.

## STANDARD OF REVIEW

Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of
>
> the case.

Fed. R. Evid. 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

In light of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999),[1] the Court must screen proffered expert

---

[1] The Supreme Court held that *Daubert* applies to all expert testimony, not only scientific expert testimony.  *Kumho Tire Co.*, 526 U.S. at 141.

testimony for relevance and reliability. *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008).

## DISCUSSION

**Gail Peoples**

"Peoples, who specializes in the provision of auxiliary aids and services for medical school students at the University of California, Davis ("UCD"), will testify that the provision of CART and qualified interpreters does not fundamentally alter the medical school curriculum, if this issue remains live." (Pl.'s Br., Filing No. 252 at 2-3.)

Creighton objects to such testimony for two principal reasons. First, Creighton contends that Peoples's experience and testimony relate to the UCD curriculum, and she has no knowledge of Creighton Medical School's curriculum or universal medical school curricula. Second, Creighton notes that its fundamental alteration defense is asserted only with respect to Argenyi's request for interpreters in the clinical portion of his education; therefore Peoples's testimony would be irrelevant to other aspects of the curriculum. Creighton cites to Peoples's deposition to establish that she has disavowed any knowledge of the clinical portion of Argenyi's medical school education or the impact of providing him with interpreters in that setting. (Def.'s Reply Br., Filing No. 256 at 4 (citing Peoples's Dep., Filing No. 256-2 at 168:13-19, 118:2-6).)

The Court concludes that Creighton's fundamental alteration defense "remains live" only with respect to Argenyi's request for interpreters in the clinical portion of his medical school education, and Peoples has disavowed any opinion as to the impact of providing

him with interpreters in that setting. Creighton's motion in limine will be granted with respect to the testimony of Peoples in Argenyi's case-in-chief.

**Margaret Tyska Heaney**

Heaney is "a certified CART reporter and CART expert who can explain what CART is, how it works, and how Argenyi used CART in the medical school classrooms." (Pl.'s Br., Filing No. 252 at 2.)

There does not appear to be any genuine dispute as to Heaney's qualifications to testify and the relevance of her testimony. Creighton simply takes issue with the characterization of her testimony as that of an "expert," rather than a fact witness. The Court recognizes Heaney as someone who has technical or other specialized knowledge that may help the trier of fact to understand the evidence or to determine a fact in issue, and Argenyi and his attorneys will not be precluded from referring to her as an expert in her field.

**Richard Okamoto**

"Okomoto, the disability services coordinator at Seattle University, . . . will testify that on the basis of his personal interactions with Argenyi and his review of Argenyi's medical records, Argenyi needs auxiliary aids and services and that CART and qualified interpreters are the appropriate auxiliary aids for him." (Pl.'s Br., Filing No. 252 at 2.)

Creighton cites to Okamoto's deposition in support of Creighton's contention that Okamoto never conducted any analysis to determine whether an interpreter would provide effective communication for Argenyi, or whether CART services were necessary for him.

4

(Def.'s Reply Br. at 11 (citing Okamoto Dep., Filing No. 189[2], Ex. A7, 168:2-4, 175:14-176:3).) Creighton contends that Okamoto's decision to provide CART services to Argenyi at Seattle University does not provide a basis for Okamoto to testify that Argenyi *needs* CART and/or cued-speech interpreters at Creighton Medical School, because (1) Okamoto never conducted any analysis to determine any such need, and (2) Okamoto's decision to provide CART services for Argenyi at Seattle University was based on Okamoto's opinion that CART provided the *most effective* form of communication for Argenyi–a higher standard than the law requires.

Finally, Creighton contends that Okamoto should not be permitted to testify as a fact witness, pursuant to Fed. R. Ev. 403, regarding what accommodations Argenyi was provided at Seattle University, because Argenyi can provide such testimony himself and Okamoto's testimony on that subject will suggest that Argenyi *needed* such accommodations.

As the Eighth Circuit stated:

> To assert his discrimination claim under either statute, Argenyi must show that (1) he is disabled and academically qualified to attend Creighton, (2) Creighton is a "place of public accommodation (for ADA purposes) and receives federal funding (for Rehabilitation Act purposes)," and (3) Creighton discriminated against him based on his disability. *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076–77 (8th Cir. 2006). There is no dispute here as to the first two elements. The key question is whether Creighton discriminated against Argenyi by failing to provide *necessary* auxiliary aids and services during his first year of medical school and by refusing to permit Argenyi to use an interpreter during his second year clinic.

---

[2] The Court notes that while Creighton cites to Okamoto's deposition at Filing No. 189, it seems no part of Okamoto's deposition may be found at Filing No. 189. Creighton has filed excerpts from Okamoto's deposition, however, as exhibit A7 to the index of evidence submitted in support of the present Motion, which can be found at Filing No. 250-3.

703 F.3d at 447 (emphasis added).

> Regulations promulgated under Title III of the ADA require the provision of "appropriate auxiliary aids and services where *necessary* to ensure effective communication with individuals with disabilities," 28 C.F.R. § 36.303(c)(1), and instruct places of public accommodation to "consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is *needed* to ensure effective communication," *id*. § 36.303(c)(1)(ii).

*Id.* at 448 (emphasis added).

> Both the ADA and the Rehabilitation Act are intentionally broad in scope, but they do not require institutions to provide all requested auxiliary aids and services. Instead, each statute requires the responsible parties to provide *"necessary"* auxiliary aids and services to individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii) (ADA); 34 C.F.R. § 104.44(d)(1) (Rehabilitation Act). Since the ADA and the Rehabilitation Act are "similar in substance," we treat the case law interpreting them as "interchangeable." *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998). Our court has never determined the definition of *"necessary"* under Title III of the ADA so we must consult the Rehabilitation Act standards as we consider Argenyi's claims under that statute and under Title III of the ADA.

*Id.* (emphasis added.)

> The Supreme Court has held that § 504 of the Rehabilitation Act requires that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). In applying *Alexander*, our court has concluded that the Rehabilitation Act requires a private medical school to provide "reasonable accommodations . . . when a disabled student would otherwise be denied meaningful access to a university." *Stern v. Univ. of Osteopathic Med. & Health Sciences,* 220 F.3d 906, 908 (8th Cir. 2000) (citing *Alexander*, 469 U.S. at 301).

*Id.* at 448-9.

> Under a "meaningful access" standard, we have decided that aids and services "are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons," but they nevertheless "must afford handicapped persons equal opportunity to . . . gain the same benefit." *Loye v. Cnty. of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010) (citing *Alexander*, 469 U.S. at 305). The Eleventh Circuit has similarly concluded that the "proper inquiry" under the Rehabilitation Act to determine

6

> if a hospital had provided "necessary" auxiliary aids to a hearing impaired patient was whether the proffered aids "gave that patient an equal opportunity to benefit from the hospital's treatment." *Liese v. Indian River Cnty. Hosp. Dist.,* 701 F.3d 334, 343 (11th Cir. 2012). As the court observed in *Liese*, that inquiry "is inherently fact-intensive" and "largely depends on context." *Id.* at 342–43.

*Id.*

It will be for the trier of fact to determine whether Creighton failed to provide auxiliary aids that were *necessary* or *needed* to ensure Argenyi effective communication so he could enjoy meaningful access to the benefits that Creighton Medical School offered. That inquiry will be fact-intensive, largely depending on the context, *i.e.*, Argenyi's specific disabilities and specific skills, as well as the specific curriculum of Creighton Medical School.

Okamoto will be permitted to testify as a fact witness regarding Argenyi's use of auxiliary aids at Seattle University. Such testimony should not be unnecessarily duplicative, prejudicial, confusing, or misleading. The Court is not persuaded, however, that Okamoto's opinions as to appropriate auxiliary aids for Argenyi at Creighton Medical School are supported by any of the four criteria of Fed. R. Ev. 702. Accordingly, Creighton's motion in limine will be granted with respect to opinion testimony of Okamoto in Argenyi's case-in-chief.

IT IS ORDERED:

1. The Defendant Creighton University's Renewed Motion in Limine to Exclude Expert Testimony (Filing No. 248) is granted in part, as follows:

    a. The Motion is granted with respect to testimony of Plaintiff's designated expert witness, Gail Peoples, in Plaintiff's case-in-chief;

    b.  The Motion is granted with respect to opinion testimony of Plaintiff's designated expert witness, Richard Okamoto, in Plaintiff's case-in-chief, although he may present testimony as a fact witness; and

2.  The Motion is otherwise denied.

DATED this 27th day of June, 2013.

                BY THE COURT:

                s/Laurie Smith Camp
                Chief United States District Judge