## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL S. ARGENYI, | ) | CASE NO. 8:09CV341 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| CREIGHTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Motion in Limine (Filing No. 277). For the reasons discussed below, the Motion will be granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Michael S. Argenyi is a medical student at Creighton University who has a hearing disability. He brought this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Argenyi does not know sign language, but relies primarily on "cued speech," which uses hand signals to represent sounds, and Communication Access Real-time Transcription ("CART"), a system which transcribes spoken words into text on a computer screen. Before starting medical school, he received a bilateral cochlear implant, and his physicians recommended that he be provided with access to CART, a cued speech interpreter, and an FM system that would direct sound to his cochlear implants. Creighton University provided some, but not all, of the accommodations Argenyi requested.

This Court granted summary judgment in favor of Creighton, and Argenyi appealed. The United States Court of Appeals for the Eighth Circuit reversed, concluding that genuine issues of material fact remained "as to whether Creighton denied Argenyi an equal opportunity

to gain the same benefit from medical school as his nondisabled peers by refusing to provide his requested accommodations." *Argenyi v. Creighton Univ.*, 703 F.3d 441, 451 (8th Cir. 2013).

The matter is set for jury trial on August 20, 2013. Creighton has moved, in limine, to (1) preclude Argenyi from seeking reimbursement for costs he incurred in securing CART and interpreters for his classes at Creighton; (2) preclude Argenyi, under Federal Rule of Evidence 408, from presenting evidence that Creighton allowed him to use and paid for interpreters during settlement negotiations; (3) limit Esther Argenyi, M.D.'s testimony by Federal Rule of Evidence 701; (4) exclude Dr. Robert Pollard as a trial witness; (5) exclude Dr. Christopher Moreland as a trial witness; (6) exclude testimony from Dr. Brit Thedinger regarding conversations he had with Creighton's legal counsel; (7) exclude testimony from Argenyi on his subjective belief; (8) exclude witness testimony regarding how Creighton's conduct toward Argenyi affected the witnesses emotionally; (9) exclude witnesses' opinions of unfair treatment or violations of the law; (10) exclude testimony regarding other lawsuits or complaints against Creighton; (11) exclude testimony regarding any action or order of the court concerning pretrial matters, (12) exclude testimony regarding objections to discovery, assertions of privilege, or discovery disputes; (13) exclude any solicitation of juror promises; (14) exclude arguments regarding injunctive relief; and (15) exclude evidence regarding settlement discussions, negotiations, or conduct.

2

## STANDARDS OF REVIEW

Fed. R. Evid. 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 408 provides:

> (a) Evidence of the following is not admissible–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or a statement made during compromise negotiations about the claim–except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 702 provides:

3

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

## DISCUSSION

## I.  Reimbursement for costs Argenyi incurred in securing CART and interpreters

Creighton contends that Argenyi should be precluded from offering evidence about the expenses he incurred in securing CART and interpreters during his M1 and M2 school years at Creighton, because he is not entitled to receive compensatory damages.  Creighton asserts that the ADA claim affords Argenyi only equitable relief, and the Rehabilitation Act claim affords him compensatory damages only if he can demonstrate that Creighton was deliberately indifferent to his right to accommodation, which—Creighton contends—he cannot prove.  Finally, Creighton argues that Argenyi should not be permitted to disguise his claim for compensatory damages as one for equitable restitution.

The jury will determine "whether Creighton denied Argenyi an equal opportunity to gain the same benefit from medical school as his nondisabled peers by refusing to provide his requested accommodations." *Argenyi v. Creighton Univ.*, 703 F.3d at 451.   If the jury finds that Creighton *did* deny Argenyi such an opportunity, then the jury will determine whether Creighton acted with "deliberate indifference to the strong likelihood that pursuit of its

questioned policies [would] likely result in a violation of federally protected rights." *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011). If the jury concludes that Creighton acted with such deliberate indifference, then the jury may determine what award of damages will compensate him for the loss suffered. The Court will determine what equitable relief, if any, is proper; and the Court will address the distinction between compensatory damages and equitable restitution when and if it is necessary to do so. Accordingly, Creighton's motion in limine to preclude Argenyi from offering evidence of the costs he incurred in obtaining CART and interpreters will be denied.

## II. Evidence that Creighton paid for and allowed Argenyi to use interpreters, during settlement negotiations

Creighton states that it allowed Argenyi to use an interpreter in clinical settings for a short time in connection with settlement negotiations, and Argenyi should not be permitted to offer evidence of that fact in an effort to show that Creighton conceded Argenyi's need for an interpreter. Argenyi states that he has no intention of offering evidence of his use of interpreters for such a purpose, but only to show how his experience in the clinic with the use of interpreters differed from his experience without the interpreters. While Creighton's conduct during settlement negotiations is inadmissible to prove the validity of Argenyi's claims or to impeach statements made by Creighton, it may be admissible for other purposes. Accordingly, the Court will not preclude Argenyi, in limine, from presenting any testimony or evidence about his use of interpreters during certain clinics. Any suggestion that the allowance of such interpreters was a concession by Creighton of the validity of Argenyi's claims, or a recognition by Creighton of Argenyi's need for the interpreters, or a

relinquishment of any defenses raised by Creighton, however, will be objectionable under Rule 408.

### III.  Dr. Esther Argenyi's testimony

Dr. Esther Argenyi is the Plaintiff's mother, and has been listed as a fact witness. Creighton seeks an order precluding her from offering any opinions based on scientific, technical or other specialized knowledge.

Plaintiff acknowledges that Dr. Argenyi is a fact witness and not an expert witness, and that she may not offer opinions based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Plaintiff notes that Dr. Argenyi intends to offer testimony about her personal knowledge of her son's communication needs and what auxiliary aids are necessary to ensure his effective communication. Plaintiff also states that Dr. Argenyi intends to testify about her personal experience using interpreters for patients in the clinical setting, and how doctors use interpreters in the clinical setting in general, noting that such testimony is relevant to issues of "academic deference." Plaintiff suggests that Dr. Argenyi's testimony on such subjects is no different from testimony of doctors from Creighton Medical School, also not listed as expert witnesses.

Dr. Argenyi may testify about her personal observations of her son's communication skills and his need for accommodations to ensure effective communications in different settings where she has observed him.  She may not offer testimony about her personal experience as a doctor using interpreters in the clinical setting, nor about how other doctors use interpreters in the clinical setting in general, nor may she offer opinions regarding "academic deference" based on her experience as a physician or former medical student.

6

Similarly, doctors from Creighton Medical School, not listed as experts, may not offer such testimony except to explain why decision-makers acting on behalf of the Defendant took certain actions relevant to these proceedings.

## IV.  Dr. Robert Pollard's testimony

Similarly, Plaintiff has listed Dr. Robert Pollard as a non-expert witness and expects to elicit testimony from him on "the question of whether there is a reasonable professional basis to conclude that deaf doctors are better trained without the use of interpreters." (Pl. Brief, Filing No. 298 at 9.)  Plaintiff notes that "Pollard has been directly involved in the integration and use of auxiliary aids and services, such as interpreters, into the clinical environment for dozens of medical students, medical residents, and nursing students who are deaf." (*Id.*)  Plaintiff contends that Dr. Pollard's opinions are based on his personal observations, are "highly relevant" to the issues in this case, and will assist the jury. (*Id.*)

The testimony the Plaintiff seeks to elicit from Dr. Pollard is purely expert in nature, is not admissible as lay testimony, and the Defendant's motion in limine will be granted with respect to Dr. Pollard.

## V.  Dr. Christopher Moreland's testimony

Dr. Christopher Moreland is also listed by Plaintiff as a non-expert witness, and Plaintiff expects to elicit from Dr. Moreland testimony regarding his experience as a deaf medical student and physician, specifically about his experience using interpreters in such settings. Plaintiff contends that Dr. Moreland is not being offered as an expert witness, because he will be testifying about his own experiences and his personal knowledge of the use of interpreters by deaf medical students and doctors and what costs were involved. Plaintiff asserts that such

7

"testimony is highly relevant and will assist in answering questions at issue in this litigation."
(Pl. Brief, Filing No. 298 at 12.)

While Dr. Moreland's testimony may be highly relevant and helpful to the finders of fact, it is expert testimony. The proposed testimony is based on specialized knowledge within the scope of Rule 702. It is on that ground that Creighton objects to the testimony, and Dr. Moreland will be precluded, in limine, from offering testimony about his experience as a medical student or as a physician, or his observations of other students and doctors. If he had communications with Argenyi or Creighton that are relevant to issues in this case, and otherwise admissible, he may be permitted to testify about such communications.

## VI. Dr. Brit Thedinger's testimony regarding conversations he had with Creighton's legal counsel

Plaintiff seeks to offer testimony from Dr. Brit Thedinger to the effect that Dr. Thedinger told Creighton decision-makers about Argenyi's difficulty hearing lectures in his first year of medical school. Plaintiff asserts that this testimony goes to the issue of whether Creighton's alleged discrimination was intentional. Creighton contends that the testimony is irrelevant, unfairly prejudicial, and will cause confusion and undue delay. Creighton's motion in limine as it relates to Dr. Thedinger will be denied, and its objections will be addressed at trial.

## VII. Testimony from Argenyi about his subjective beliefs

The Eighth Circuit Court made clear that Argenyi may offer his subjective opinions regarding how various accommodations have affected his ability to communicate and understand spoken language. 703 F.3d at 446-48. ("Regulations promulgated under Title III of the ADA require the provision of 'appropriate auxiliary aids and services where *necessary*

8

to ensure effective communication with individuals with disabilities,' 28 C.F.R. § 36.303(c)(1), and instruct places of public accommodation to 'consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication,' *id*. § 36.303(c)(1)(ii)." *Id*. at 448.)

Argenyi will not be precluded, in limine, from offering his subjective opinions regarding the effectiveness of various forms of communication and accommodations in the classroom and clinical settings.

## VIII. Testimony regarding how Creighton's conduct toward Argenyi affected witnesses emotionally

Creighton seeks to preclude testimony of witnesses regarding their emotional reactions to Creighton's denial of accommodations requested by Argenyi.   Creighton specifically raises concern that testimony about the emotional impact of such decisions on Argenyi's family members may be elicited.

Plaintiff argues that Creighton's treatment of certain witnesses is relevant to demonstrate Creighton's intent, and to support Argenyi's claim for compensatory damages. Plaintiff asserts that Creighton engaged in abusive conduct toward Argenyi and his interpreter and CART reporter, and that they reacted to such abuse with an emotional response. Plaintiff contends that Creighton is attempting to exclude evidence of its intentional discrimination by attempting to bar testimony about the witnesses' reactions.

Argenyi's interpreter and CART reporter, and Argenyi's family members, are not parties to this case.  Evidence of their feelings and emotions lacks relevance.  If, however, testimony of an emotional reaction by a witness in a given circumstance cannot fairly be

9

separated from relevant evidence, it may be admissible.  Because the context of any such testimony is unclear and speculative at this time, no order in limine will be issued to preclude such testimony.

## IX.  Witnesses' opinions of unfair treatment or violations of the law

It is the responsibility of the Court to instruct the jury on the law, and witnesses will be precluded, in limine, from offering their opinions about what the law provides or requires.

## X.  Testimony regarding other lawsuits or complaints against Creighton

Plaintiff contends that Creighton violated a consent decree related to accommodations for the hearing-impaired and that such conduct is relevant to the issue of Creighton's intent and deliberate indifference.  Creighton contends that the consent decree concerned a separate entity, and was directed to services for patients and not medical students.

Testimony or other evidence regarding other lawsuits or complaints against a defendant is generally irrelevant; and, if relevant, is likely to confuse or mislead the jury or create undue prejudice.  The relevance and potential prejudicial impact of the Plaintiff's proposed evidence will be addressed by the Court outside the presence of the jury to determine its admissibility, and the Plaintiff will be precluded, in limine, from offering such testimony or other evidence without prior leave of Court.

## XI.  Testimony regarding any action or order of the court concerning pretrial matters

It should be unnecessary for counsel to elicit testimony concerning pretrial matters or orders of the courts, or for counsel to refer to such matters in the presence of the jury.  Such references could cause confusion or undue prejudice.  Accordingly, the Plaintiff will be

precluded, in limine, from offering such testimony or making such references in the presence of the jury without prior leave of Court.

## XII.   Testimony regarding objections to discovery, assertions of privilege, or discovery disputes

It should be unnecessary for counsel to elicit testimony concerning discovery, assertions of privilege, or discovery disputes, or for counsel to refer to such matters in the presence of the jury.  Such references could cause confusion or undue prejudice.  Accordingly, the Plaintiff will be precluded, in limine, from offering such testimony or making such references in the presence of the jury without prior leave of Court.

## XIII.  Solicitation of juror promises

In this district, the bulk of the voir dire is conducted by the trial judge.  Counsel are generally limited to ten minutes per side for voir dire.  It is not uncommon for attorneys to solicit "promises" from the members of the jury panel that they will base their verdict only on the evidence and the law, and disregard other improper influences.  Nor is it uncommon for attorneys to solicit "promises" from the members of the jury panel that they will bear in mind the applicable burden of proof.  If counsel should solicit improper "promises" from the jury panel, opposing counsel may object and the objection will be addressed by the Court.

## XIV.  Arguments regarding injunctive relief

Because injunctive relief is a matter of equity, within the province of the judge and not the jury, counsel for the Plaintiff will refrain from presenting to the jury any argument regarding proposed injunctive relief.

## XV.  Evidence regarding settlement negotiations

Pursuant to Fed. R. Ev. 408, Plaintiff will not present argument or offer testimony or other evidence regarding settlement negotiations unless and until the Court determines that the argument, testimony, or other evidence falls within an exception to Rule 408.

Accordingly,

IT IS ORDERED:

1.  Defendant Creighton University's Motion in Limine (Filing No. 277) is granted in part, as follows:

      a. Dr. Esther Argenyi may offer testimony only as a lay witness, consistent with this opinion;

      b.  Dr. Robert Pollard is excluded as a trial witness;

      c.  Dr. Christopher Moreland may offer testimony only as a lay witness, consistent with this opinion;

      d.  All witnesses are precluded from offering opinions about what the law requires, or at any time may have required;

      e.   Plaintiff will offer no testimony, other evidence, or argument about other lawsuits or complaints against Creighton, without first obtaining leave of Court;

      f.  Plaintiff will offer no testimony, other evidence, or argument about pretrial matters, such as discovery, discovery disputes, pretrial rulings, or assertions of privilege;

      g.  Counsel for Plaintiff will make no argument to the jury regarding proposed injunctive relief;

      h. Plaintiff will offer no testimony, other evidence, or argument about settlement negotiations; and

2.  The Motion is otherwise denied.

DATED this 14th day of August, 2013.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge