**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

MICHAEL S. ARGENYI,                                  CASE NO. 8:09CV341

                  Plaintiff,

      v.                                            JURY INSTRUCTIONS

CREIGHTON UNIVERSITY,

                  Defendant.

**INSTRUCTION NO. 1**


Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect.  I now give you some additional instructions.  You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now.  You must not single out some instructions and ignore others, because all are important.  This is true even though some of those I gave you at the beginning of and during trial are not repeated here.

You will have copies of the instructions I am about to give you now in the jury room.  Remember, you have to follow all instructions, no matter when I give them, whether or not you have written copies.

**INSTRUCTION NO. 2**

I have not intended to suggest what I think your verdict should be by any of my rulings or comments during the trial.

## INSTRUCTION NO. 3

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

You may consider a witness's intelligence; the opportunity the witness had to see or hear the things testified about; a witness's memory, knowledge, education, and experience; any reasons a witness might have for testifying a certain way; how a witness acted while testifying; whether a witness said something different at another time; whether a witness's testimony sounded reasonable; and whether or to what extent a witness's testimony is consistent with other evidence that you believe.

In deciding whether to believe a witness, remember that people sometimes hear or see things differently and sometimes forget things.  You have to decide whether a contradiction is an innocent misrecollection or lapse of memory, or an intentional falsehood; that may depend on whether it has to do with an important fact or only a small detail.

**INSTRUCTION NO. 4**


A witness who has special knowledge, skill, experience, training, or education in a particular area may testify as an expert in that area.  You determine what weight, if any, to give to an expert's testimony just as you do with the testimony of any other witness.  You should consider the expert's credibility as a witness, the expert's qualifications as an expert, the sources of the expert's information, and the reasons given for any opinions expressed by the expert.

**INSTRUCTION NO. 5**

Michael Argenyi and Creighton have stipulated – that is, they have agreed – to certain facts in this case.  You should, therefore, treat those facts as having been proved.  Those facts include the following:

1.      Creighton is a "place of public accommodation" for purposes of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 ("ADA").

2.      Creighton is a recipient of Federal Financial Assistance for purposes of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794 ("Rehabilitation Act").

3.      Michael Argenyi has a "disability" as defined by the ADA and the Rehabilitation Act.

4.      Michael Argenyi was admitted to Creighton University School of Medicine and successfully completed his M1 and M2 years using auxiliary aids and services he provided himself.

5.      Michael Argenyi requested and was granted a leave of absence after he completed his M2 year pending the outcome of this case.

6.      Michael Argenyi paid approximately $51,002.50 for auxiliary aids at Creighton University during his first year of medical school.

7.      Michael Argenyi paid approximately $59,719.12 for auxiliary aids at Creighton University during his second year of medical school.

8.      Michael Argenyi paid approximately $46,086.00 in tuition, fees, and costs to Creighton University for his first year of medical school.

9.    Michael Argenyi paid approximately $48,104.00 in tuition, fees, and costs to Creighton University for his second year of medical school.

# INSTRUCTION NO. 6

You will have to decide whether certain facts have been proved by the greater weight of the evidence.  A fact has been proved by the greater weight of the evidence if you find that it is more likely true than not true.  You decide that by considering all of the evidence and deciding what evidence is more believable.

You have probably heard the phrase "proof beyond a reasonable doubt."  That is a stricter standard than "more likely true than not true."  It applies in criminal cases, but not in this civil case; so put it out of your mind.

**INSTRUCTION NO. 7**


In connection with Michael Argenyi's claim that Creighton discriminated against him under the Americans with Disabilities Act ("ADA") and Section 504 of The Rehabilitation Act of 1973 ("Rehabilitation Act"),  the burden is on a plaintiff to prove the following elements by the greater weight of the evidence:

*First*, the plaintiff is disabled and academically qualified to attend the defendant's school; and

*Second*, the defendant is a "place of public accommodation" (for ADA purposes) and receives federal funding (for Rehabilitation Act purposes); and

*Third*, the defendant discriminated against the plaintiff based on his disability by failing to provide necessary auxiliary aids and services.

In this case, there is no dispute as to the first two elements.  The parties agree that Michael Argenyi is disabled and academically qualified to attend Creighton's medical school; and the parties agree that Creighton is a "place of public accommodation" (for ADA purposes) and receives federal funding (for Rehabilitation Act purposes).  Therefore, the only question you must decide is whether Creighton discriminated against Michael Argenyi based on his disability by failing to provide him with necessary auxiliary aids and services.  If Michael Argenyi has not proved the third element by the greater weight of the evidence, then your verdict must be for Creighton.

9

# INSTRUCTION NO. 8

When considering whether Creighton discriminated against Michael Argenyi based on his disability by failing to provide necessary auxiliary aids and services, you should only consider Creighton's conduct related to Michael Argenyi's M1 and M2 years.  You should not consider Creighton's conduct regarding potential auxiliary aids and services for Michael Argenyi's M3 and M4 years, or his taking of a leave of absence.

## INSTRUCTION NO. 9

The term "auxiliary aids and services" includes--

(1) Qualified interpreters on-site or through video remote interpreting services; notetakers; real-time computer-aided transcription services (CART); written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones, videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

(2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs; large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;

(3) Acquisition or modification of equipment or devices; and

(4) Other similar services and actions.

Creighton is not required to provide all requested auxiliary aids and services. Instead, Creighton is required to provide "necessary" auxiliary aids and services to

individuals with disabilities to provide such individuals with meaningful access to the educational benefits offered by Creighton.

**INSTRUCTION NO. 10**

When considering what auxiliary aids and services were "necessary" you may consider that:

Creighton was required to provide auxiliary aids and services necessary to provide Michael Argenyi with meaningful access to an education at Creighton Medical School.  "Meaningful access" does not mean that Creighton was required to produce the identical result or level of achievement for Michael Argenyi as compared to other medical students, but Creighton nevertheless was required to give Michael Argenyi an equal opportunity to gain the same benefit.

The type of auxiliary aid or service necessary to ensure effective communication may have depended on the method of communication used by Michael Argenyi; the nature, length, and complexity of the communication involved; and the context in which the communication was taking place.  Creighton was required to consult with Michael Argenyi whenever possible to determine what type of auxiliary aid he needed to ensure effective communication, but the ultimate decision as to what measures to take rested with Creighton, provided that the method chosen resulted in effective communication. In order to be effective, auxiliary aids and services needed to be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of Michael Argenyi.

**INSTRUCTION NO. 11**


In deciding whether Creighton failed to provide Michael Argenyi with necessary auxiliary aids and services to afford him meaningful access, you should consider only the information Creighton knew or should have known at the time it made its decision as to what auxiliary aids or services to provide Michael Argenyi.

.

**INSTRUCTION NO. 12**

The law permits Creighton to require a student requesting auxiliary aids and services to provide current documentation from a qualified professional, demonstrating that the student has a disability, and supporting the student's need for the requested auxiliary aids and services. However, Creighton is not permitted to employ unnecessarily burdensome proof-of-disability criteria that would preclude or unnecessarily discourage individuals with disabilities from establishing that they are entitled to auxiliary aids and services.

### INSTRUCTION NO. 13

If you find that Michael Argenyi has met his burden of proving that Creighton discriminated against him by failing to provide necessary auxiliary aids and services, then you must determine whether Creighton has proved by the greater weight of the evidence that providing such auxiliary aids and services would have resulted in an undue burden on Creighton.  Undue burden means significant difficulty or expense.

In determining whether an action would result in an undue burden, factors to be considered include—

(1) The nature and cost of providing Michael Argenyi with the auxiliary aids and services he requested;

(2) The overall financial resources of Creighton Medical School; the number of persons employed at Creighton Medical School; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;

(3) The geographic separateness, and the administrative or fiscal relationship of Creighton Medical School to Creighton University;

(4) The overall financial resources of Creighton University; the overall size of Creighton University with respect to the number of its employees; the number, type, and location of its facilities; and

(5) The composition, structure, and functions of the workforce of Creighton University.

16

**INSTRUCTION NO. 14**

An educational institution does not concede that an auxiliary aid or service is necessary by providing the auxiliary aid or service on a temporary basis.

**INSTRUCTION NO. 15**


If you find in favor of Michael Argenyi under Instruction No. 7 (ADA/Rehabilitation Act claim), and if you answer "no" in response to Instruction No. 13 (Undue Burden), then you must determine if Creighton's conduct was intentional.   Intentional discrimination may be inferred if you find that Creighton was deliberately indifferent to the strong likelihood that its conduct would violate Michael Argenyi's federally protected rights.  "Intentional discrimination" does not require animosity or ill will.

**INSTRUCTION NO. 16**

If you:

    (1)  find in favor of Michael Argenyi under Instruction No. 7 (ADA/Rehabilitation Act claim), and

    (2)  answer "no" in response to Instruction No. 13 (Undue Burden), and

    (3)  find that Creighton acted with discriminatory intent under Instruction No. 15,

then you must award Michael Argenyi such sum as you find will fairly and justly compensate him for any damages you find he sustained as a <u>direct</u> result of Creighton's failure to grant the auxiliary aids and services he requested.

Then you must determine the amount of any <u>other damages</u> sustained by Michael Argenyi, such as emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses.

You must enter separate amounts for these two kinds of damages in the verdict form and must not include the same items in more than one category.

Remember, throughout your deliberations, you must not engage in any speculation, guess, or conjecture and you must not award damages under this Instruction by way of punishment or through sympathy.

**INSTRUCTION NO. 17**

If you determine that Michael Argenyi should be awarded <u>direct</u> damages and/or <u>other damages</u>, you may only consider damages for his M1 and M2 years.  You may not include any damages he may have incurred after the end of his M2 year.  You may not consider any damages that he may have incurred due to his taking a leave of absence.

INSTRUCTION NO. 18

There are rules you must follow when you go to the jury room to deliberate and return with your verdict.

First, you will select a foreperson.  That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room.  You should try to reach agreement, if you can do this without going against what you believe to be the truth, because all jurors have to agree on the verdict.

Each of you must come to your own decision, but only after you have considered all the evidence, discussed the evidence fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your mind if the discussion persuades you that you should.  But, do not come to a decision just because other jurors think it is right, or just to reach a verdict.  Remember you are not for or against any party.  You are judges – judges of the facts.  Your only job is to study the evidence and decide what is true.

Third, if you need to communicate with me during your deliberations, send me a note signed by one or more of you.  You may call my chambers at tel. (402)661-7323 to inform a member of my staff that you have a note for me.  I will respond as soon as possible either in writing or orally in open court.  While you are deliberating, do not tell anyone - including me - how many jurors are voting for any side.

Fourth, your verdict has to be based only on the evidence and on the law that I have given to you in my instructions.  Nothing I have said or done was meant to suggest

what I think your verdict should be.  The verdict is entirely up to you.

Finally, the verdict form is simply the written notice of the decision that you reach in this case.   You will take this form to the jury room, and when you have all agreed on the verdicts, your foreperson will fill in the form, sign and date it, and advise Ms. Frahm or call my chambers at (402)661-7323 and tell whoever answers the telephone that you have a verdict and are ready to return to the courtroom.