UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

MICHAEL ARGENYI,
Plaintiff,

v.

CREIGHTON UNIVERSITY,
Defendant.

Case No. 8:09CV341

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR DECLARATORY, INJUNCTIVE, AND EQUITABLE RELIEF**

The jury decided all that was within its purview and delivered a verdict for Argenyi. That Defendant discriminated against Argenyi by failing to provide the auxiliary aids and services that were necessary for him to have full and equal (or meaningful) access to medical school is no longer an "allegation" or uncertain as Defendant claims. Rather, this is exactly what the jury found in stating that Argenyi was the prevailing party.

What remains is for the Court to implement the relief that the jury could not –declaratory, equitable and injunctive relief that is consistent both with the jury's verdict and with federal law. *E.g.*, *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982) ("Although the court below retains its discretion to consider all the circumstances in this case when it determines what equitable relief may be appropriate, it cannot base its decision on its own factual findings that conflict with those expressly made by the jury."); *see also, e.g.*, *Burton v. Armontrout*, 975 F.2d 543, 544-45 (8th Cir. 1992), *reh'g en banc denied*, 1992 U.S. App. LEXIS 27922, *cert. denied*, 508 U.S. 972 (1993).

In its Brief in Opposition to Plaintiff's Motion for Declaratory, Equitable, and Injunctive Relief, Defendant fails to rebut the heart of the dispute remaining between the parties – a dispute that boils down to three critical points. First, Defendant concedes, as it must, that Argenyi's need for CART and interpreters going forward to M3 and M4 "may indeed be the same" as his need for CART and interpreters in M1 and M2. Def.'s Br. in Opposition to Pl.'s Mot. for Declaratory, Equitable, and Injunctive Relief ("Def.'s Br.") [Doc. No. 414] at 2. Second, Defendant offers no evidence to establish that providing those necessary auxiliary aids and services in M3 and M4 would be an undue burden for M3 and M4, despite the fact that it bears the burden of proof on this issue. Third, Defendant does not, and cannot, offer any legal authority to contradict the clear statutory and regulatory mandate that a university may not pass the cost of providing necessary auxiliary aids and services on to a student.

The brief opposing Argenyi's motion for declaratory, injunctive, and equitable relief was Defendant's opportunity to assert that Argenyi did not need the requested auxiliary aids for M3 and M4 and/or offer evidence that the provision of the necessary auxiliary aids and services would be an undue burden. While Defendant spilled much ink arguing that it did not get a fair chance at trial to put on evidence regarding undue burden for M3 and M4 auxiliary aids and services, it can hardly be missed that Defendant utterly failed to put any such evidence forward now. Having made no effort to meet its burden of proof on undue burden, Defendant must be ordered to provide the auxiliary aids and services Argenyi requested so that he might, at long last, have meaningful access to a Creighton education.

The jury found that Defendant discriminated against Argenyi in violation of two federal laws by refusing to pay for the auxiliary aids and services he needed in medical school. Reimbursement of the auxiliary aid costs Argenyi was unlawfully required to pay, and an Order

requiring Defendant to provide what the jury found to be necessary going forward is the only conclusion to this four year legal battle that is consistent with the verdict the jury delivered and simply puts Argenyi in the position he would have been absent Defendant's discrimination against him.

## I. Argenyi Did Not Waive His Claims for Declaratory, Equitable, and Injunctive Relief

Argenyi never waived his claim to declaratory, equitable, or injunctive relief for the M3 and M4 years. At trial, multiple statements by the Court and lengthy statements by Argenyi's counsel showed clearly that Argenyi waived only his claim for damages arising from the M3 and M4 years, but not his claims for any other relief. This Court should reject Defendant's efforts to rewrite history.

### A. Argenyi Waived Only Damages for M3 and M4 Years

During trial on August 28, 2013, Defendant sought to introduce demonstrative exhibits it created solely for trial showing wildly inflated and speculative "estimates" for the supposed cost of providing auxiliary aids and services to Argenyi during M3 and M4. These "estimates" were not based on any admissible evidence, and were not generated from or based on evidence listed in Defendant's Trial Exhibits or otherwise before the jury. As the exhibits in question related only to future events, namely Defendant's wild speculation about the costs of providing auxiliary aids in M3 and M4, these exhibits had no relevance to matters before the jury. The jury was charged with deciding whether Defendant violated the law, and not with awarding equitable or injunctive relief.

Argenyi's counsel objected to the Defendant's attempt to introduce these highly misleading, prejudicial and irrelevant exhibits before the jury, asserting that the "estimates" were not relevant to any issue before the jury. Specifically, counsel for Argenyi stated at trial:

> The question of the cost of auxiliary aids and services for the M3/M4 year is an issue not within the purview of the jury. M3/M4 is what happens going forward. So that is within your Honor's discretion to address after the jury's decision.
>
> … So any kind of forward relief, forward-acting relief is squarely the province of the Court. What happened up to the day Mr. Argenyi left Creighton University in May 2010, that's for the jury. But there's a hard line there.
>
> After Mr. Argenyi left, what happens next, that's injunctive relief. And that's within the province of the Court.

Trial Tr., Aug. 28, 2013 [Doc. No. 408] at 7:4-7, 14:3-8. Defense counsel agreed that the Court, not the jury, would decide prospective relief stating, "I fully agree with opposing counsel that the Court would decide . . . what the prospective injunctive relief would be." *Id.* at 14:5-7.

The Court was careful to confirm the boundaries of Argenyi's waiver of his damages claim, revisiting the issue at least twice on August 28, 2013:

> And as I've noted, the M3 and M4 information regarding the undue burden on Creighton would be irrelevant if the jury is instructed only to consider years M1 and M2 and that the plaintiff is not claiming any *damages* related to anything that happened after he ended his M2 year. And I'm willing to instruct the jury that way.

*Id.* at 17:21-26 (emphasis added); *see also id.* at 19:25-20:2 (stating that "we will limit the *damages* to the M1, M2 years") (emphasis added).

In response to the Court having asked Argenyi's counsel to confirm the boundaries of the damages waiver, Argenyi's counsel clearly indicated that while the claim for damages would be waived, the claim for injunctive relief was not waived, stating:

> And so what I understand clearly is that we were willing to waive the <u>damage</u> claim for the denial of opportunity for M3and M4 so that we were seeking damages from the jury for M1and M2 <u>and were turning to the Court for injunctive</u>

> relief going forward.
>
> And I understood that as is routinely done in these kinds of cases, as Mr. Moore himself argued in his motion in limine, evidence that is purely going to injunctive relief is evidence that shouldn't go to the jury. That's evidence that goes to the Court. It's simply not relevant to the jury's determination. There's no way it can be. It wasn't considered. It wasn't considered by his clients.
>
> It's not only not relevant, but it would be prejudicial insofar as the speculative numbers that they've invented without any opportunity for both sides to offer some fact-finding evidence about what would happen going forward and what would be needed going forward under the specific circumstances of where Mr. Argenyi would be placed because context matters.
>
> And so where he might actually be doing each of the eight-week segments matters a lot going forward. And that kind of evidence should have an opportunity to go to the Court. And then it's within the Court's discretion to make those determinations going forward about the injunctive relief.
>
> Obviously Mr. Argenyi wants to go back to medical school. And so the ability to go back rests in the Court's hands. And assuming we get the verdict that we expect from the jury, we would be turning to the Court and seeking the opportunity to put on evidence, as Mr. Moore would also have the opportunity to put on evidence, to the Court of what kind of injunctive relief we would be seeking.

*Id.* at 175:1-176:7 (emphases added). At no time did Argenyi waive his claims for declaratory, equitable or injunctive relief with respect to M3 and M4.

The fact that the claim for damages for M3 and M4 was waived and the claims for declaratory, injunctive, and equitable relief were *not* – was again reflected in the jury instructions and the Court's remarks after the jury entered its verdict. Jury Instruction No. 17 directed the jury to consider damages with respect to Argenyi's M1 and M2 years only. Jury Instructions [Doc. No. 369] at 20. Following Argenyi's post-verdict, oral motion for declaratory, injunctive, and equitable relief, the Court remarked: "As we know, the injunctive relief issue remains with me," Trial Tr., Sept. 4, 2013 [Doc. No. 418] at 15:2-3, and requested that Argenyi submit a written motion detailing whether and when Argenyi wished to return to medical school and the

auxiliary aids and services he would require, *id.* at 15:3-25. Defendant made no objection to the availability of such relief at the time and asked only about the timing of post-judgment motions. *Id.* at 16:17-21. Thus, at the close of trial, the Court and the parties all knew and agreed that equitable and injunctive relief were still on the table for the M3 and M4 years. *Cf., e.g., Burton*, 975 F.2d at 545 (explaining that "the court may grant injunctive relief despite a jury's determination that defendants are not liable for damages").

**B. There Was No Right to Trial by Jury on Injunctive Relief for the M3 and M4 Years**

Defendant errs in arguing that the jury had to decide injunctive relief for M3 and M4 years. As Defendant itself briefed prior to trial, the case law is crystal clear that the jury decides only issues going to damages while the Court decides issues going to equitable and injunctive relief. Specifically, Defendant stated in pre-trial briefing:

> Argenyi has no right to a jury trial under Title III of the ADA or the Rehabilitation Act in this case. First, Title III of the ADA only provides for equitable relief and there is no statutory nor Constitutional right to a jury trial for Title III claims. . . .
>
> . . . In the instant case, Argenyi is not entitled to compensatory damages because he is unable to show Creighton acted with 'deliberate indifference.' If he establishes his Rehabilitation Act claim, he is entitled only to equitable relief. Therefore, he is not entitled to a jury trial under the Rehabilitation Act and his request for a jury trial should be stricken.

Br. in Support of Def.'s Renewed Mot. for Partial Summ. J. [Doc. No. 259] at 14, 15. Yet Defendant now argues that this Court has no authority to award prospective relief. Having previously argued that the Court decides prospective relief, Defendant is estopped from asserting that it was really the jury all along that was to decide everything.

Defendant relies on Federal Rule of Civil Procedure 38, which states that the jury may decide all issues "triable of right by a jury." As Defendant explained prior to trial, there was no "right" to have a jury determine injunctive relief for the M3 and M4 years. Br. in Support of

Def.'s Renewed Mot. for Partial Summ. J. [Doc. No. 259] at 14-15. That relief is for this Court alone to award. Here, the jury has delivered a verdict in favor of Argenyi finding that Creighton violated federal law. Argenyi now requests relief on an issue not triable by right of jury: injunctive relief for the last two years of medical school.

## II. This Court Should Award Declaratory and Injunctive Relief for the M3 and M4 Years

The jury's verdict established that Argenyi needed the auxiliary aids and services that he requested for his M1 and M2 years. Defendant has conceded that Argenyi's needs remain the same for his M3 and M4 years and has put forth no admissible evidence to establish that meeting these needs would impose an undue burden. Thus, the Court should award declaratory and injunctive relief as outlined in Plaintiff's Motion for Declaratory, Equitable, and Injunctive Relief for the M3 and M4 years.

A court must award injunctive relief consistent with a jury verdict. *Gibson*, 695 F.2d at 1101 ("Although the court below retains its discretion to consider all the circumstances in this case when it determines what equitable relief may be appropriate, it cannot base its decision on its own factual findings that conflict with those expressly made by the jury"); *accord Shelby County Jail Inmates*, 798 F.2d at 1091-92; *Moore*, 636 F.2d at 157. Accordingly, the jury determined liability, while this Court determines the injunctive relief that follows for the third and fourth years in manner consistent with the jury verdict. Trial Tr. Sept. 4, 2013 [Doc. No. 418] at 15:2-3 ("As we know, the injunctive relief issue remains with me."); *Gibson*, 695 F.2d at 1101 (court's findings may not conflict with jury's findings).

This, indeed, is the very purpose of the instant round of briefing: following the jury verdict, this Court charged the parties with briefing the legal and factual issues to assist this Court in determining what further facts to find and what equitable and injunctive relief to award.

*Id.* at 15:1-25. In accordance with the Court's charge, Argenyi's opening brief explains the evidentiary record that supports his request for equitable relief and for injunctive relief for the final two years. Defendant's failure to follow suit does not change the purpose of this round of briefing.

### A. Defendant Concedes that Argenyi Needs the Same Auxiliary Aids and Services for the Final Two Years of Medical School

Defendant concedes in its brief that Argenyi's "communication needs for M3/M4 may indeed be the same" as for the first two years of medical school. Def.'s Br. [Doc. No. 414] at 2. This concession comes after the jury verdict stating that Defendant did not provide the auxiliary aids and services (CART and interpreters) that Argenyi needed during his M1 and M2 years.[1] Further, Argenyi explained in detail in his opening brief what auxiliary aids and services are necessary for effective communication during the M3 and M4 years, noting that his hearing abilities have not changed since the first two years of medical school. Defendant concedes this point and does not dispute the auxiliary aids and services that Argenyi is requesting for the final two years.

### B. Creighton Failed to Meet its Burden of Proving Undue Burden with Respect to M3 and M4

As the parties and this Court agreed, the jury was to decide liability, and then this Court would determine injunctive relief for the M3 and M4 years. This round of briefing is about the scope of that injunctive relief, and Defendant's Response Brief was its opportunity to present evidence on undue burden for the M3 and M4 years for this Court to make a factual

[1] In response to a jury question, Defendant refused Argenyi's offer to accept a bifurcated verdict and allow the jury to reach a separate verdict with respect to each year of medical school. Trial Tr., Sept. 4, 2013 [Doc. No. 418] at 4:10-16. Defendant insisted on an all-or-nothing determination of the necessity of Argenyi's requested auxiliary aids and services and must accept the consequences of this position.

determination on the affirmative defense. Defendant knew of this opportunity to bring evidence of undue burden before the Court in its response brief but failed to do so.

Undue burden is an affirmative defense for which Defendant bears the burden of proof. 42 U.S.C. § 12182 (b)(2)(A)(ii); 28 C.F.R. § 36.303 (a); *Colo. Cross-Disability Coalition v. Hermanson Family Ltd. Pshp.*, 264 F.3d 999, 1003 (10th Cir. 2001) (defendant bears the burden of proving undue burden). Department of Justice regulations make clear that Defendant must provide auxiliary aids and services "to the maximum extent possible" short of incurring undue burden. 28 C.F.R. § 36.303(g). Moreover, Defendant cannot simply point to the cost of auxiliary aids and services; the cost must be compared with Defendant's financial resources. 28 C.F.R. § 36.104.

Defendant's brief is remarkable in that it talks about what evidence it "would have" and "could have" offered with respect to undue burden but does not actually offer any evidence of undue burden. Instead, Defendant complains about this Court's ruling excluding one demonstrative exhibit that it would have offered to the jury, but this demonstrative exhibit is not evidence sufficient to meet its burden of proof with respect to the affirmative defense of undue burden. A demonstrative exhibit alone is not admissible evidence: it is blackletter law that demonstrative exhibits must be based on admissible evidence. *E.g.*, *United States v. Wainwright*, 351 F.3d 816, 821 (8th Cir. 2003) (explaining that charts must be based "upon evidence *in the record*") (emphasis added); *Ford Motor Co. v. Auto Supply Co.*, 661 F.2d 1171, 1175 (8th Cir. 1981) (explaining that a summary must be excluded if drawn from data that is inadmissible).

Defendant cannot meet its burden of proving undue burden with a demonstrative exhibit based on nothing more than wild speculation that interpreters must be paid on an hourly basis when the record shows that interpreters are much less expensive when paid on a salary basis.

Decl. of Ronda Rankin [Doc. No. 200-8] at pg. 2-3 ¶¶10,12-14. The demonstrative exhibit also assumed that two interpreters would always be required even though Defendant itself provided just one interpreter in clinical training during the brief period that Argenyi was provided interpreters during the M2 clinic. *Id.* ¶ 8. Further, evidence of the cost of the auxiliary aids and services requested is only part of the undue burden analysis, which also looks at the institution's overall financial resources. *See* 28 C.F.R. § 36.104. Defendant made not the slightest effort to submit *any* evidence suggesting an inability to pay for the necessary auxiliary aids and services.[2] Since Defendant has utterly failed to offer any admissible evidence on undue burden for the M3/M4 years and rests instead on conclusory assertions by counsel, this Court should hold that Defendant failed to meet its burden of proving undue burden for the M3 and M4 years.

As the jury determined that Argenyi needed CART and interpreters during his first two years of medical school, Defendant conceded that Argenyi's needs remain the same for his third and fourth years of medical school, and Defendant has put forth no admissible evidence in support of its affirmative defense of undue burden, Argenyi requests that this Court order Defendant to provide the auxiliary aids and services that Argenyi requested in his Brief in Support of Plaintiff's Motion for Declaratory, Equitable, and Injunctive Relief. *See* [Doc. No. 395] at 29-33.

## III. Argenyi is Entitled to Equitable Relief in the Form of Reimbursement

If the jury had determined that Defendant satisfied its obligations under Title III and section 504 by having Argenyi pay for his own auxiliary aids and services, it would have found for the Defendant. It did not do so, instead finding that Argenyi was a prevailing party.

[2] The reason for this is clear. Creighton clearly can afford to pay for the necessary auxiliary aids and services. Indeed, what it has paid in legal fees to keep Argenyi out is many multiples of what it would have cost to communicate with Argenyi in the first place.

Therefore, the jury's verdict establishes that Defendant's refusal to pay for these services was discriminatory. Having the Defendant pay for these services now, by reimbursing Argenyi for the money he paid for necessary auxiliary aids and services plus the interest accrued on these expenses, is necessary to give full effect to the jury's verdict. For the reasons described below, and as Argenyi has argued consistently, *see* Pl.'s Br. in Opposition to Def.'s Motion for Summary Judgment [Doc. No. 204] at 72-73; Pl.'s Opp. to Def.'s Motion in Limine [Doc. No. 298] at 3 n.1; Pl.'s Trial Br. [Doc. No. 326] at 44, reimbursement is an equitable form of relief. Reimbursement is for this Court to award.

**A. Reimbursement Is a Form of Equitable Relief**

Equitable relief is an attempt "to give the plaintiff the very thing to which he was entitled," *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (quoting *Maryland Dep't of Human Resources v. Dep't of Health and Human Serv.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985) (Bork, J.)). Defendant does not contest that it unlawfully saved well over $100,000 by refusing to pay for necessary CART and interpreter services for Argenyi. Defendant also does not contest that Argenyi took out loans, and incurred interest, to pay for these auxiliary aids and services himself, auxiliary aids and services that the jury found were necessary for effective communication. Defendant cannot contest that it has "ill-gotten gains" from violating the law – it has and continues to hold on to the funds that it saved by violating Title III and section 504. These are the traceable and "ill-gotten gains" that Defendant must disgorge to reimburse Argenyi for expenses that were Defendant's obligation to pay.

Put differently, "[r]eimbursement merely requires the [Defendant] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it followed the law. *Burlington School Committee v. Massachusetts Department of Education*, 471

U.S. 359, 370-71 (1985). This was, in fact, the entire point of four years of litigation – that Argenyi have the opportunity to meaningfully participate in his medical education with Creighton bearing the cost of needed auxiliary aids and services – and this premise was won with the jury verdict.

Defendant's attempt to distinguish the Supreme Court's decision in *Burlington* is unpersuasive. Defendant, like the school district in *Burlington*, pocketed funds at the plaintiff's expense by refusing to provide an accessible education mandated by federal law and by unlawfully passing costs on to Argenyi. Argenyi, like the parents in *Burlington*, paid for the services that were determined to be necessary to ensure educational access. As the Supreme Court observed, "it would be an empty victory to have a court tell [plaintiffs] several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials." 471 U.S. at 370. In reaching this holding, the Supreme Court stressed that reimbursement is not damages: "[T]he Town repeatedly characterizes reimbursement as 'damages,' but that simply is not the case. Reimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it provided an accessible education to a student with a disability. *Id.* at 370-71. The Eighth Circuit and other courts apply *Burlington* to encompass reimbursement for the full range of educational services that a student is entitled to under the IDEA. *JB ex rel. Bailey v. Avillar-XIII Sch. Dist.*, 721 F. 3d 588, 594 (8th Cir. 2013) (collecting cases).

Defendant's argument regarding the lengthy administrative as compared to the judicial review process does not distinguish the IDEA from the ADA and Rehabilitation Act . The *Burlington* Court noted that "[a]s this case so vividly demonstrates, however, the review process is ponderous. A final judicial decision on the merits of an IEP will in most instances come a year

or more after the school term covered by that IEP has passed." 471 U.S. at 370. This case, too, vividly demonstrates the "ponderous" process of judicial review: Argenyi filed suit during his first semester of medical school, more than four years ago. His classmates have since graduated. He continues to pay the principal and interest on loans he was forced to take because of Defendant's discrimination. Thus, to borrow from *Burlington*, "it would be an empty victory to have a court tell [Argenyi] several years later that [he was] right but that these expenditures could not in a proper case be reimbursed by the school." *See id.*

Defendant argues that Argenyi could have filed a motion for preliminary injunctive relief asking the Court to order Defendant to provide CART and interpreter services for classes and labs. However, in *Burlington*, the Supreme Court itself noted that the parents had filed a motion for preliminary injunctive relief and had not been able to demonstrate irreparable harm because they were able to pay for educational expenses during the pendency of the lawsuit. *Id.* at 364. Argenyi's ability to take out loans to pay for the auxiliary aids and services likewise would have prevented this Court from issuing a preliminary injunction because he would not have been able to establish "irreparable harm" for the same reason that the parents could not in the early stages of the *Burlington* litigation. For these reasons, Defendant's attempt to distinguish *Burlington* on this ground fails.

Contrary to Defendant's assertion, the IDEA does not provide "a cash payment to parents who enrolled their children in an alternative school." Def.'s Br. [Doc. No. 414] at 29. Rather, the IDEA is a statute that requires public schools to assume the cost of providing special education and related services to ensure that students with disabilities receive an appropriate education, just as Title III and section 504 require Defendant to provide the necessary auxiliary aids and services to ensure full and equal access to medical school. *Compare Burlington*, 471 U.S. at

367-68, *with* 28 C.F.R. § 36.303(c) (Title III regulation); 34 C.F.R. § 104.44(d) (section 504 regulation). The IDEA, like section 504, conditions receipt of federal funding on a promise to provide special education and related services to students with disabilities. *Compare Burlington*, 471 U.S. at 368 (IDEA), *with* 34 C.F.R. § 104.5(a) (section 504 regulation); *Argenyi*, 703 F.3d at 448. Just as elementary and secondary schools violate the IDEA when they refuse to provide necessary supplementary aids and services as defined in that statute, colleges and universities violate Title III and 504 when they fail to provide necessary auxiliary aids and services as defined in these federal laws. In both instances, defendants are liable for the reimbursement upon a finding that the defendant unlawfully withheld services. This is exactly what happened in this case when the jury found that Argenyi was the prevailing party.

Finally, Defendant ignores the case law applying *Burlington* to ADA and section 504 cases. Courts have recognized the similarities between the IDEA, ADA, and section 504 and their overlap in remedies, and have held that reimbursement available as equitable relief is also available under section 504 and the ADA. *See, e.g., Jennifer B. v. Chilton Cnty. Bd. of Educ.*, 891 F. Supp. 2d 1313, 1325 (M.D. Ala. 2012) (holding that section 504 and the ADA offer the same remedy of equitable reimbursement as the IDEA); *Millay v. State of Maine Dep't of Labor*, 1:11-cv-00438-NT, 2012 U.S. Dist. LEXIS 173239, at *14-*15 (D. Me. Sept. 21, 2012) (holding that reimbursement is available as a form of equitable relief under the Rehabilitation Act).[3]

[3] Defendant errs in relying instead on a number of ERISA cases that deal with the mismanagement of funds and the resulting financial harm to employees. These cases are distinguishable because the employer did not have any "ill-gotten gains" and had no traceable funds to disgorge to the plaintiffs. *See e.g., Knieriem v. Group Health Plan, Inc.*, 434 F. 3d 1058, 1062 (8th Cir. 2006) ("The funds sought are not identifiable, or even known, because Siade never incurred the requested transplant costs."); *Kerr v. Charles F. Vatterott & Co.*, 184 F. 3d 938, 945 (8th Cir. 1999) ("Vatterott & Co. gained nothing by withholding Kerr's money. Kerr received the earnings in his account. If we focus on Vatterott & Co.'s zero gain, rather than Kerr's alleged loss, there is nothing to disgorge. Thus, Kerr's claim is not a claim for

For the foregoing reasons, this Court should follow *Burlington* and its progeny applying the Supreme Court precedent to ADA and section 504 cases and hold that reimbursement is due as an equitable form of relief.

**B. This Court, Not the Jury, Awards Equitable Relief**

Defendant makes a last-ditch effort to avoid reimbursing Argenyi for the expenses that it should have paid, erroneously contending that Argenyi's counsel asked the jury to reimburse Argenyi for these expenses, when Argenyi's counsel was only describing the expenses that Argenyi has had to pay out of pocket.

Defendant's judicial estoppel argument fails because Argenyi has consistently and strenuously argued that reimbursement is a form of equitable relief. *See* Pl.'s Br. in Opposition to Def.'s Mot. for Summ. J. [Doc. No. 204] at 72-73; Pl.'s Opp. to Def.'s Motion in Limine [Doc. No. 298 ] at 3 n.1; Pl.'s Trial Br. [Doc. No. 326] at 44.

Further, this Court specifically stated, *after the jury verdict*, that it would decide whether reimbursement is equitable or legal in nature. Trial Tr., Sept. 4, 2013 [Doc. No. 418] at 15:24-25 ("I will bone up on the difference between damages and equitable restitution."). The Court's reservation of this issue for briefing means that as of the jury verdict, the Court had not yet made up its mind on the characterization of reimbursement and therefore that there can be no judicial estoppel.

Defendant's argument also overlooks well-established precedent that equitable relief is for the Court alone to award. In *Diaz-Fonseca v. Commonwealth of Puerto Rico*, 451 F.3d 13

---

restitution."); *Contos v. Anheuser-Busch Cos.*, 2009 U.S. Dist. LEXIS 88360, *6 (E.D. Mo. Sept. 25, 2009) (plaintiff not entitled to the difference between the amount of the plan payout he received and the amount he would have received if the payout had been processed more quickly); *see also Mertens v. Hewitt Associates*, 508 U.S. 248, 249-50 (1993) (deciding whether a nonfiduciary can be held liable under ERISA for a breach of fiduciary duty, which has nothing to do with "ill-gotten gains").

(1st Cir. 2006), a jury awarded reimbursement as part of a compensatory damages award. *Id.* at 31 n.22. On appeal, the First Circuit held the jury lacked the authority to award such relief because "reimbursement is a matter of equitable relief, committed to the sound discretion of the district court." *Id.* at 31 & n.21 (brackets and quotation marks omitted); *see also id.* at 31 n.21 (citing Fed. R. Civ. P. 39(c)). The First Circuit noted that the district court then determined the scope of reimbursement in its own right. *Id.* at 31-32.[4]

As *Diaz-Fonseca* makes clear, it is for this Court to determine the amount of reimbursement due to Argenyi. *See id.* (reiterating that the judge, not the jury, decides reimbursement). The jury here found that Creighton violated Title III and section 504 by failing to provide necessary auxiliary aids and services. Ordering Defendant to reimburse Argenyi for the expenses that resulted from Defendant's discriminatory conduct meets the very definition of equitable relief, that is: "to give [Argenyi] the very thing to which he was entitled," *Bowen*, 487 U.S. at 895.

For these reasons, Defendant's arguments must fail and this Court may award reimbursement of auxiliary aid costs and interest as equitable relief.

**C. This Court Should Award Reimbursement**

Defendant does not dispute the amount Argenyi should be repaid for the actual cost of auxiliary aids and services and interest.[5] For the reasons described in Argenyi's opening brief, this Court should award reimbursement that would do no more than give Argenyi "the very thing

[4] In this case, the jury specifically sought clarification whether it could award equitable relief when it asked the Court if it could award damages absent a finding of intent. Jury's Fourth Set of Questions [Doc. 380] at 1. The Court responded that the jury must follow the instructions. Response to Jury's Fourth Set of Questions [Doc. 382] at 1. These instructions said damages could be awarded only upon a finding of intent. *See* Jury Instruction No. 16 [Doc. 369] at 19.

[5] Argenyi's loans accrue $721.51 per month in interest. As of January 1, 2014, the principal and interest will total $135,752.64.

to which he was entitled": auxiliary aids and services paid for by Creighton. Failing to grant such relief would let Defendant unlawfully pass on the cost of providing auxiliary aids and services to a student, in clear violation of federal law, and simply walk away without ever having to foot that bill. In so doing, it would effectively nullify Title III and section 504. Awarding reimbursement is consistent with the jury verdict finding that Defendant violated Title III and section 504 during the first two years of medical school and is necessary to give effect to that verdict.

**CONCLUSION**

As the Court anticipated both during and after trial, the issues of declaratory, equitable and injunctive relief are now in its hands. Trial Tr., Aug. 28, 2013 [Doc. No. 408] at 9:5-6; Trial Tr., Sept. 4, 2013 [Doc. No. 418] at 15:2-15:25. The only outcome that effectuates the jury's verdict – unringing the bell of Creighton's discriminatory conduct – is for this Court to award declaratory, injunctive, and equitable relief to Argenyi consistent with that verdict. Granting such relief places the actual cost (including interest) of providing the auxiliary aids and services that Defendant was obligated to provide squarely where the law dictates it belongs: on Creighton University.

Argenyi respectfully requests that the Court enter an Order with all due speed awarding the relief requested so that Argenyi might return to medical school for the upcoming academic year with full, equal, and meaningful access to the medical education he has fought so hard to attain.

DATED this 9th day of December 2013.

FOR THE PLAINTIFF,
s/Dianne D. DeLair, #21867

Disability Rights Nebraska
Federal Trust Building
134 S. 13th Street, Suite 600
Lincoln, NE 68508
Phone: (402) 474-3183
Fax: (402) 474-3274
Email: dianne@drne.org

Mary C. Vargas, Esq. #14135 (D. Md.)
Michael S. Stein, Esq.
Stein & Vargas, LLP
5100 Buckeystown Pike, Suite 250
Frederick, MD 21704
Phone: (240)793-3185
Fax: (888) 778-4620
Email: mary.vargas@steinvargas.com

Marc Charmatz, #09358 (D. Md.)
Caroline Jackson, #18545 (D. Md.)
National Association for the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Phone: (301)587-7732
Fax: (301) 587-1791
Email: marc.charmatz@nad.org

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Scott P. Moore
Chris Hedican
Allison Balus

s/Dianne D. DeLair