**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

Michael S. Argenyi,

Plaintiff,

v.

Creighton University,

Defendant.

CASE NO. 8:09cv341

**SUR-REPLY BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY, EQUITABLE, AND INJUNCTIVE RELIEF**

Plaintiff, Michael S. Argenyi ("Argenyi"), raised issues for the first time in his Reply Brief in Support of Motion for Declaratory, Equitable, and Injunctive Relief (collectively referred to as "Injunctive Relief") in response to which Defendant, Creighton University ("Creighton") offers this Sur-Reply. Argenyi claims that: (1) he waived only his claim for "damages" for his M3 and M4 years of medical school; (2) Creighton conceded that Argenyi has the right to the injunctive relief; and (3) Creighton received "ill-gotten gains" by denying his Argenyi the auxiliary aids and services for M1 and M2. Argenyi's brief misconstrues the record and none of his arguments are supported in law.

**I. Argenyi waived his "claim for relief" for M3/M4**

Argenyi argues that he waived his claim for "damages" for M3/M4 at trial, but not his claim for injunctive relief. The argument is disingenuous, factually incorrect, and legally unsustainable. Argenyi expressly waived his claim for injunctive relief. Even assuming *arguendo* that he only intended to waive his claim for "damages," his waiver prevents him for now seeking injunctive relief.

The issue of whether Argenyi's requested aids and services for M3/M4 imposed

an undue burden is unequivocally an issue of <u>liability</u>. Both the ADA and Rehabilitation Act expressly state that if the costs of aids and services requested by a student imposes an undue burden, Creighton's refusal to provide those aids and services is not a violation of the law. What is more, Argenyi agrees that the issue of whether the auxiliary aids and services he requested for M3/M4 imposed an undue burden on Creighton has not yet been decided. Indeed, he states in his brief that he is entitled to injunctive relief because Creighton "utterly failed to put any [evidence of undue burden] forward now." (Argenyi Brief (Filing No. 420) at 2). Argenyi cannot resurrect his claim for injunctive relief for M3/M4 after he waived that claim to preclude Creighton from presenting its undue burden evidence to the jury.

Argenyi made a knowing and voluntary wavier of his "claim for relief" for M3/M4. The Court was clear and unequivocal that if Argenyi wanted to preclude Creighton from presenting its undue burden defense for M3/M4, he must make a "knowing and voluntary" waiver of "relief regarding the M3, M4 years."

> The plaintiff appeared to be so adamant about the objection to that information and appeared to be willing <u>to waive relief regarding the M3, M4 years</u> that I thought if the plaintiff feels so strongly and is willing to waive claims regarding the M3, M4 years, we'll just focus on M1, M2. Mr. Moore raises some very legitimate concerns. And I want to make sure that the plaintiff's waiver is knowing and voluntary and was not something just made on the spur of the moment under the pressure of the Court's ruling.

(*Id*. at 174:4-15) (emphasis added). The trial record shows that Argenyi made an express, voluntary, and knowing waiver of his claim for "relief" for M3/M4.

Even were the record not so clear, the law does not allow Argenyi to waive only his claim for "damages" if it strips Creighton of the ability to offer defense to liability. Creighton agrees that the Court is tasked with determining injunctive relief, but the

Court only has the authority to grant such relief if the jury determined Creighton violated the ADA and Rehabilitation Act when it denied Argenyi interpreters and CART for his M3/M4 years. The jury did not make that determination because the Court took that claim from the jury in response to Argenyi's objection. Without a determination of whether Creighton violated the law by refusing to provide Argenyi auxiliary aids and services for M3/M4, the Court has no authority to grant injunctive relief for those years. In his motion, Argenyi is asking this Court to make its own factual findings regarding M3/M4, determine if Creighton violated the ADA and Rehabilitation Act for its denial of aids and service for those years, and then grant injunctive relief. This goes beyond asking for injunctive relief— it is a request for a new trial. The plaintiff rested, the jury made its findings of fact, and the factual record is now closed.[1] Argenyi has absolutely no authority to support his position that he can have a second trial before this Court after waiving a claim that was ripe for the jury to decide.[2]

## II. Creighton did not waive its right to oppose Argenyi's request for injunctive relief.

Argenyi also claims that Creighton waived its right to oppose his request for injunctive relief for M3/M4. This waiver theory is based upon Creighton's statement that

[1] Much of Argenyi's brief is spent attacking the credibility of the evidence Creighton would have offered at trial but for his objection. Whether Creighton's evidence of undue burden is "wild speculation," "highly misleading," and "estimates," are issues of fact and credibility that the jury was charged to decide. By objecting to Creighton's offer of evidence and waiving his claim, Argenyi deprived the jury the opportunity to make such credibility determinations.

[2] Argenyi's argument that his motion is analogous to a request for front pay is mistaken. Front pay is merited only if a jury finds an employer refused to hire or promote the plaintiff based upon the plaintiff's protected class. In that instance, the jury has found the employer liable for discrimination and the Court need only determine how much the plaintiff would have received in wages had the employer not discriminatorily refused to hire or promote the plaintiff. Here, Argenyi is requesting that the Court first determine if providing him auxiliary aids and services for his M3/M4 year would impose an undue burden on Creighton— a question of liability— and then asking the Court to determine what injunctive relief is warranted. The issue of liability was for the jury and Argenyi waived his right to have that claim decided.

Argenyi's communication needs "may be the same" for M3/M4 as for M1/M2. First, whether his communication needs are the same for M1/M2 and M3/M4 was not decided by the jury. When Argenyi withdrew his claim for M3/M4, the jury was stripped of the opportunity to make that determination. Notably, it is now impossible to know if the jury concluded CART or interpreters or both were necessary to ensure Argenyi meaningful access or that either or both were necessary for M1 versus M2. In formulating the jury instructions and verdict form, Argenyi did not request that the jury separately consider whether he needed CART and interpreters nor whether he needed different aids and services for M1 versus M2. Argenyi's assertion that he "offered a bifurcated verdict" in response to the jurors' questions is immaterial. Argenyi waived any objection to the jury instructions and verdict form when he did not offer a "bifurcated verdict" form and did not object to the jury instructions or verdict form before the jury charge. *See Black v. Shultz*, 530 F.3d 702, 708 (8th Cir. 2008) (citing *Niemiec v. Union Pacific Railroad Co.*, 449 F.3d 854, 857 (8th Cir. 2006)).

Argenyi also asserts that "Defendant is estopped from asserting that it was really the jury all along that was to decide everything" based on Creighton's pretrial motion for Partial Summary. In that motion, Creighton sought summary judgment on Argenyi's claim for compensatory damages. (Doc. No. 259). Had Creighton been successful, the only relief Argenyi could have sought at trial would have been equitable relief. He therefore would not have been entitled to a jury trial at all. However, the Court denied Creighton's motion, allowing Argenyi to seek compensatory damages at trial. Once Argenyi's claims went to a jury, *all* liability issues needed to be decided by the jury, as already explained in Creighton's opening brief. (Filing No. 414 at 14). While the

question of entitlement to and amount of equitable relief is one to be made by the Court, that question cannot even be reached if a liability determination has not been made by the jury. [3]

Creighton also has never conceded that providing Argenyi his requested auxiliary aids and services for M3/M4 were not unduly burdensome. To the contrary, Creighton offered to present evidence of undue burden to the jury at trial, but Argenyi objected to Creighton's offer in exchange for waiving his claim for relief for M3/M4. Put simply, Argenyi's claim that Creighton conceded Argenyi is entitled to injunctive relief is absurd.

**III. Creighton did not receive "ill-gotten gains"**

Argenyi claims that "Defendant, like the school district in *Burlington*, pocketed funds at the plaintiff's expense by refusing to provide an accessible education mandated by federal law and by unlawfully passing costs on to Argenyi." (Argenyi Brief at 12). Argenyi argues that his claim for reimbursement for money spent on auxiliary aids and services is the same as the parents' claim for reimbursement in *Burlington*, which was considered restitution. It is hard to imagine that Nebraska Disability Rights would have such a gross misunderstanding of the IDEA.

Through the IDEA, the federal government provides funding to school districts to spend *exclusively* on special education programs for students with disabilities. *See* 20 U.S.C. §§ 1400 *et seq.* As explained by the Supreme Court in *Burlington*, "the Act provides federal money to state and local educational agencies that undertake to implement the substantive and procedural requirements of the Act" (e.g. the Nebraska

[3] This distinguishes Argenyi's case from the front pay cases cited by Plaintiff in which the courts hear additional evidence on entitlement to and amount of front pay, but the jury has already decided the underlying question of liability.

Department of Education). The Court also noted that the law includes a cash entitlement from the government to parents of children with a disability that can be used if the school district does not provide special education services. In *Burlington*, the school district actually received money that it was supposed to spend on the special education programs that the student received elsewhere. The school district's failure to spend the money on special education programs resulted in "ill-gotten gains."

Creighton, on the other hand, receives no federal monies to spend on auxiliary aids and services for Argenyi or for any other student. That is why Argenyi's claim is one for damages rather than restitution. There is no pot of money that Creighton received from a governmental agency that should have been spent on Argenyi. Argenyi is not seeking reimbursement of a cash entitlement from the government, but rather damages he claims to have suffered as a result of Creighton's discrimination. His claim for reimbursement is a claim for monetary damages.

Finally, Argenyi claims that it would be an "empty victory" if he did not receive reimbursement for the money he spent on auxiliary aids and services. This statement could not be further from the truth. The jury held that Creighton failed to provide Argenyi auxiliary aids and services, but also concluded that Argenyi failed to prove intentional discrimination. The jury knew full well that it could award Argenyi monetary damages— which included the reimbursement Argenyi seeks in this motion and which his lawyer asked the jury to award— only if it found Creighton engaged in intentional discrimination. The jury spoke loudly and clearly by finding Creighton did not engage in intentional discrimination and that Argenyi was entitled to take nothing from Creighton. Argenyi tried and failed to convince the jury he was entitled to what he now requests

from this court: compensatory damages.

**CONCLUSION**

For the reasons set forth above and in Creighton's Brief in Opposition to Argenyi's motion, Creighton respectfully requests that the Court deny Argenyi's motion for declaratory, equitable, and injunctive relief.

DATED this 18th day of December, 2013

CREIGHTON UNIVERSITY , Defendant,

By: s/Scott P. Moore
Scott Parrish Moore (NE# 20752)
Allison D. Balus (NE# 23270)
of BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, NE 68102-2068
Phone: 402-344-0500
spmoore@bairdholm.com
abalus@bairdholm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Dianne D. DeLair
Marc Charmatz
Mary C. Vargas

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

None.

s/Scott P. Moore

DOCS/1229920.2