# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **MICHAEL S. ARGENYI,** | CASE NO. 8:09CV341 |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| **CREIGHTON UNIVERSITY,** | |
| Defendant. | |

This matter is before the Court on the Plaintiff's Motion for Declaratory, Equitable, and Injunctive Relief (Filing No. 394). For the reasons discussed below, the Motion will be granted in part, to ensure the Defendant offers the Plaintiff appropriate accommodations for his hearing disability during the remainder of his medical school education and training.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael S. Argenyi, who has a hearing disability, was a medical student at Creighton University. He brought this action under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.

Argenyi does not know American Sign Language, but relies primarily on lip-reading and "cued speech," which uses hand signals to represent sounds. He also relies on Communication Access Real-time Transcription ("CART"), the transcribing of spoken words into text on a computer screen. Before starting medical school, he received a bilateral cochlear implant, and his physicians recommended that he be provided with access to CART, a cued speech interpreter, and an FM system that would direct sound to his cochlear implants. Creighton provided some, but not all, of the accommodations Argenyi requested.

Argenyi completed the first two years of medical school, paying for certain CART services and sign-supported oral interpreters himself. When Creighton declined to allow him to use interpreters in certain clinical settings, he believed he would not be successful in his third and fourth years of medical school, and took a leave of absence

The matter was tried to a jury, commencing on August 20, 2013. On September 4, 2013, after more than two days of jury deliberation and deadlock, the lawyers for the parties agreed to accept a verdict by a majority of eight jurors. That majority returned a verdict in favor of Argenyi with respect to two issues: (1) Creighton discriminated against Argenyi based on his disability by failing to provide him with necessary auxiliary aids and services during his first two years of medical school, and (2) it would not have been an undue burden on Creighton for it to provide such auxiliary aids and services. A majority of eight jurors also determined that Argenyi had not demonstrated that Creighton's discrimination was intentional, and the jury awarded him no damages.[1]

Argenyi now seeks declaratory, equitable, and injunctive relief in the following respects: (1) a declaration that Creighton must provide him with auxiliary aids and services to ensure effective communication in the third and fourth years of medical school, including CART in didactic settings and interpreters in small groups and clinical settings, and an order directing it to do so, and (2) an order directing Creighton to reimburse Argenyi $133,595.11 for the auxiliary aids and services for which he paid in his first and second years of medical school, including interest at eight percent per annum.

---

[1] Both parties proposed jury instructions on the issue of damages, suggesting language based on the decision in *Meagley v. City of Little Rock,* 639 F.3d 384 (2011). (*See* Defendant's Proposed Jury Instructions, Filing No. 324 at #23 and #28, and Plaintiff's Proposed Jury Instructions, Filing No. 328, at #5 and #7.) *Meagley* involved an action brought against a city under Title II of the ADA, however, and not an action brought against a private entity under Title III of the ADA. 639 F.3d at 386.

2

Creighton argues that Argenyi waived his right to any injunctive relief for his third and fourth years of medical school, because he insisted on limiting the evidence and argument at trial so the jury heard only about matters concerning his first two years of medical school, effectively precluding the jury from deciding whether Creighton would incur an undue burden if it provided him with auxiliary aids and services in his third and fourth years of medical school. Creighton also argues that the jury found Argenyi was not entitled to an award of damages for the expenses he incurred for auxiliary aids and services in his first two years of medical school, because Creighton's discrimination was not intentional, and the Court should not circumvent the jury's verdict by awarding such damages in the form of "equitable relief."

## DISCUSSION

### I. Injunctive Relief

The Court takes judicial notice of the Court's file, the testimony offered at trial, and the exhibits received into evidence. The Court also has considered the evidence presented by the parties in conjunction with the pending Motion (Filing Nos. 397-404, 413).

Argenyi and his attorneys did not waive their right to seek injunctive relief for his M3 and M4 years of law school by declining to offer evidence of damages related to his leave of absence or his future education. The record of proceedings made clear that the Court and the parties understood that a request for injunctive relief concerning Argenyi's future education would be entertained by the Court if Argenyi were successful in demonstrating that the accommodations offered by Creighton had not met the standards applicable under the ADA and the Rehabilitation Act.

Argenyi met his burden of demonstrating that Creighton did not provide him with accommodations necessary for effective communication and meaningful access to a medical education. Creighton is correct that it is not possible to determine whether the jury concluded that *all* or only *some* of the accommodations requested by Argenyi and not offered by Creighton were in fact necessary. Creighton has not demonstrated, in connection with the pending Motion, that providing Argenyi with the accommodations he has requested for his M3 and M4 academic years would impose an undue burden on Creighton.

The U.S. Court of Appeals for the Eighth Circuit made clear its opinion that, "[i]n a case such as this it is especially important to consider the complainant's testimony carefully because 'the individual with a disability is most familiar with his or her disability and is in the best position to determine what type of aid or service will be effective.'" *Argenyi v. Creighton University,* 703 F.3d 441, 446 (8th Cir. 2013) (quoting U.S. Dep't of Justice, The Americans with Disabilities Act Title II Technical Assistance Manual, at II–7.1100 (1993)).

At this juncture, the paramount objective of both parties–and of the Court–should be to ensure that Argenyi has an opportunity to complete his medical education successfully and begin his career as a physician, without continuing disputes and litigation. Considering all the testimony and evidence offered at trial and in the parties' later submissions, and giving particular weight to Argenyi's own testimony about the effectiveness of CART in lecture settings and the effectiveness of interpreters in small-group and clinical settings, as well as his observations about the deficiencies of other accommodations, the Court will grant his motion for injunctive relief with respect to his M3 and M4 years of medical school.

## II.  Equitable Restitution

At the close of trial, Argenyi's attorneys asked the jury to award him compensatory damages, including an amount representing the cost of the CART and interpreter services he supplied for himself during his M1 and M2 years of medical school, and interest at eight percent per annum.  The jury found that Argenyi did not demonstrate that Creighton intentionally discriminated against him, nor that Creighton was deliberately indifferent to a strong likelihood that its conduct would violate his federally protected rights.  Accordingly, the jury awarded him no damages.

The Court now concludes that it was improper to instruct the jury on the question of damages, because Argenyi's action was one against a private entity, presented under Title III of the ADA and § 504 of the Rehabilitation Act.  *See Stebbins v. Legal Aid of Arkansas*, 512 F. App'x 662, 663 (8th Cir. 2013) ("Title III of the ADA does not provide for private actions seeking damages . . . . [U]nless enforced by the Attorney General, only remedy for violation of Title III of ADA is injunctive relief")*; Wojewski v. Rapid City Reg'l Hosp. Inc.,* 450 F.3d 338, 342 (8th Cir. 2006) (Title III only provides injunctive relief and death of plaintiff moots the action); *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076 n.4 (8th Cir. 2006) (Except for the Rehabilitation Act's requirement that a person's disability serve as the sole impetus for an adverse action, and the lack of a federal funding requirement in the ADA, cases interpreting the laws are "interchangeable").

Although the Court concludes that the jury was improperly instructed on the issue of damages, that error was harmless.  The jury's conclusion that Creighton did not discriminate against Argenyi intentionally, nor with deliberate indifference to his rights,

corresponds to the Court's own impression of the evidence. When Argenyi first applied for admission to Creighton's medical school and visited the campus for interviews, he used no aids or accommodations for his hearing impairment. He communicated well through lip-reading, and represented that he had performed well as an aide in hospital settings without special accommodations for his hearing impairment. Although he applied to a number of medical schools, Creighton was the only school that offered him admission. Once he began classes, Creighton offered accommodations for his hearing impairment, including an FM system directing sound to his cochlear implants, note-takers, access to certain written lecture materials, special seating, and an interpreter in lecture settings. His instructors encouraged him to try his best to communicate without interpreters in clinical settings, noting that direct communication between physician and patient was preferable.

Argenyi rejected accommodations that were offered by Creighton, and arranged for his own accommodations. The jury concluded that Creighton did not provide Argenyi with all the accommodations he needed, and it would not have been an undue burden for Creighton to do so. It cannot be inferred from the jury's verdict, however, that it concluded Argenyi needed *all* the accommodations he requested. As Creighton notes, the jury may have concluded that he needed CART in lecture settings, or that he needed interpreters in clinical settings, but not necessarily both.

Argenyi now suggests that the Court exercise its power in equity to order Creighton to pay him the sum the jury did not award as compensatory damages, characterizing that sum as equitable restitution. Argenyi relies on decisions of other courts applying other statutes, but no cases brought under Title III of the ADA, and no cases against private entities.

6

Assuming, without deciding, that this Court has the authority to order Creighton to pay Argenyi for the expenses he incurred in purchasing certain accommodations during his M1 and M2 years, the Court would not exercise its power in equity to do so.  Creighton was not unjustly enriched during Argenyi's M1 and M2 years, and there was no evidence that Creighton acted in bad faith.  The fact that damages are not available to an individual plaintiff in an action against a private entity under Title III of the ADA also suggests that Congress did not intend courts to use their powers in equity to award compensatory damages in the form of equitable restitution.

Accordingly,

IT IS ORDERED:

1. Plaintiff Michael Argenyi's Motion for Declaratory, Equitable, and Injunctive Relief (Filing No. 394) is granted in part, as follows:

Beginning in the fall semester of 2014, and continuing until his graduation or the discontinuation of his enrollment as a medical student, Creighton University will provide Michael Argenyi with auxiliary aids and services for his effective communication, including Communication Access Real-time transcription (CART) in didactic settings and sign-supported oral interpreters in small group and clinical settings,

and the Motion is otherwise denied.

2.  A separate Judgment will be entered.

DATED this 19th day of December, 2013.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge