IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL S. ARGENYI,<br><br>    Plaintiff,<br><br>vs.<br><br>CREIGHTON UNIVERSITY,<br><br>    Defendant. | CASE NO. 8:09CV341<br><br>MEMORANDUM AND ORDER ON ATTORNEYS' FEES AND COSTS |

  This matter is before the Court on the Motion for Attorneys' Fees and Costs (Filing No. 442) filed by Plaintiff Michael S. Argenyi. The motion is supported by indexes of evidence that include attorney affidavits and expense records (Filing Nos. 444 and 451), and briefs (Filing Nos. 443 and 450). Argenyi also filed a separate Bill of Costs (Filing No. 430). Defendant Creighton University opposes the motion, as to the amounts requested, on several grounds set forth in its brief (Filing No. 448) and supported by its index of evidence (Filing No. 449). For the reasons that follow, the Court concludes that an award of costs and fees is appropriate and Argenyi will be awarded $449,009.00 in attorneys' fees, $18,998.42 in nontaxable costs, and $10,365.00 in expert fees.

## BACKGROUND

  Michael S. Argenyi, who has a hearing disability, was a medical student at Creighton University. Argenyi does not know American Sign Language, but relies primarily on lip-reading and "cued speech," which uses hand signals to represent sounds. He also relies on Communication Access Real-time Transcription ("CART"), the transcribing of spoken words into text on a computer screen. Before starting

medical school, he received a bilateral cochlear implant, and his physicians recommended that he be provided with access to CART, a cued speech interpreter, and an FM system that would direct sound to his cochlear implants.  Creighton provided some, but not all, of the accommodations Argenyi requested.

Argenyi completed the first two years of medical school, paying for certain CART services and sign-supported oral interpreters himself.  When Creighton declined to allow him to use interpreters in certain clinical settings, he believed he would not be successful in his third and fourth years of medical school, and took a leave of absence.  He brought this action on September 24, 2009, under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101—213, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act").  This litigation has extended over four and one-half years with more than 440 docket entries in this Court and an appeal to the Eighth Circuit on which Argenyi prevailed.  During the course of the litigation Argenyi was represented by six attorneys: Mary C. Vargas, Michael S. Stein, Marc Charmatz, Jeffrey A. Miller, Dianne D. DeLair, and Caroline E. Jackson.

The matter was tried to a jury, commencing on August 20, 2013.  On September 4, 2013, after more than two days of jury deliberation and deadlock, the lawyers for the parties agreed to accept a verdict by a majority of eight jurors.  That majority returned a verdict in favor of Argenyi with respect to two issues: (1) Creighton discriminated against Argenyi based on his disability by failing to provide him with necessary auxiliary aids and services during his first two years of medical school, and (2) it would not have been an undue burden on Creighton for it to provide such auxiliary aids and services.  A majority of eight jurors also determined that Argenyi

had not demonstrated that Creighton's discrimination was intentional, and the jury awarded him no damages.

Following the jury verdict, the Court considered Argenyi's request for declaratory, equitable, and injunctive relief. Argenyi sought (1) a declaration that Creighton must provide him with auxiliary aids and services to ensure effective communication in the third and fourth years of medical school, including CART in didactic settings and interpreters in small-group and clinical settings, and an order directing it to do so; and (2) an order directing Creighton to reimburse Argenyi $133,595.11 for the auxiliary aids and services for which he paid in his first and second years of medical school, including interest at eight percent per annum.

On December 19, 2013, the Court awarded Argenyi the following declaratory, equitable, and injunctive relief: Beginning in the fall semester of 2014, and continuing until his graduation or the discontinuation of his enrollment as a medical student, Creighton University must provide Michael Argenyi with auxiliary aids and services for his effective communication, including CART in didactic settings and sign-supported oral interpreters in small-group and clinical settings. The Court denied Argenyi's request for reimbursement.

Argenyi now seeks an award of $584,712.62 for attorneys' fees; $10,365.00 for expert fees; $28,326.74 for nontaxable costs; and $4,485.00 for attorneys' fees related to work on his Reply Brief.

## DISCUSSION

Under the ADA and the Rehabilitation Act courts may award a reasonable attorneys' fee to a prevailing party. "To be a prevailing party, [a plaintiff] must 'succeed

on any significant issue in litigation which achieves some of the benefit [he] sought in bringing suit.'" *Forest Park II v. Hadley*, 408 F.3d 1052, 1059 (8th Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 109 (1993)). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). "The hours reasonably expended are determined by reviewing the records submitted by counsel, verifying the accuracy of the records, and then deducting excessive, redundant, or otherwise unnecessary work." *U & I Sanitation v. City of Columbus*, 112 F. Supp. 2d 902, 604 (D. Neb. 2000).

Argenyi succeeded on several significant issues, achieving some of the benefit he sought in bringing suit; therefore, he is a prevailing party. Argenyi submitted affidavits and billing records of attorneys with hourly billing rates ranging between $150.00 and $325.00. Argenyi requests $584,712.62[1] in fees for work on the merits of the litigation and preparation of this fee application; $10,365.00 for expert fees; $28,326.74 for nontaxable costs, and $4,485.00 in fees for work on his reply brief for this fee application.

## I. Attorneys' Fees

Argenyi has requested fees based on the following hours and rates:[2]

| Attorney | Legal Hours | Travel Hours | Legal Hours for Reply Br. | Travel Hourly Rate | Legal Hourly Rate |
|---|---|---|---|---|---|
| Ms. Vargas | 876.8 | 93.2 | 4.2 | $162.50 | $325 |
| Ms. DeLair | 400.7 | 57.5 | 0 | $112.50 | $225 |
| Mr. Stein | 421.9 | 14.0 | 10.4 | $125 | $300 |

---

[1] This number reflects a ten percent self-imposed reduction for duplicative efforts.

[2] This table does not reflect the ten percent self-imposed reduction for duplicative efforts.

4

| Mr. Charmatz | 258.0 | 0 | 0 | NA | $350 |
| Ms. Jackson | 216.5 | 16.2 | 0 | $75 | $150 |

Creighton contends that the Court should reduce the amount of fees Argenyi requested by fifty percent for a number of reasons.  In determining the reasonableness of his requested attorney fees, Argenyi urges the Court to consider the complexity of the litigation, the aggressiveness of the defense, the challenge and complexity of the issues, and the purported high stakes of the case.  The Court has considered the parties' arguments, and the Court concludes that Argenyi's attorneys' fee award should be reduced to $449,009.00 for work on the merits of this litigation and work on the fee application, including the Reply Brief.

### A. Reasonable Hourly Rates

"[T]he prevailing market rates in the relevant community" serve as the district court's guide in determining what is a "reasonable" hourly rate.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *see also Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  The prevailing market rate is "the ordinary rate for similar work in the community where the case has been litigated."  *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt,* 272 F.3d 1042, 1047 (8th Cir.2001)) (internal quotation marks omitted).  In civil rights cases, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  *Perdue*, 559 U.S. at 552.  "[W]hen fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates."  *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

5

Argenyi argues that out-of-town counsel was necessary in this case because of the nature of the litigation and the undesirability of the case.[3]  Nevertheless, Argenyi claims he exercised billing judgment by billing at the prevailing rates in Omaha for his four out-of-town attorneys.  The Court finds that prevailing rates in Omaha are appropriate attorneys' fees in this case.  Creighton does not contest the hourly rates for Ms. Vargas, Ms. DeLair, Ms. Jackson, or Mr. Charmatz.  However, Creighton does contest Mr. Stein's hourly rate of $300 as unreasonable.

Creighton asserts that Mr. Stein's hourly rate should be reduced to no more than $250.  In support of this claim Creighton highlights Mr. Stein's lack of experience.  At the commencement of this action, Mr. Stein had three years' experience practicing law, and at the time of trial he had seven years' experience.  Creighton also offers the declaration of Patrick J. Barrett[4] to refute Mr. Stein's requested hourly rate.  (Filing No. 449-6).  In his declaration Mr. Barrett states that after reviewing Argenyi's billing entries he believes that Mr. Stein's proposed rate of $300 is excessive based on his experience.  (*Id.* at ECF 2.)  Mr. Barrett states that "[a]n attorney in this market with comparable experience would likely have an hourly rate of no more than $250.00." (*Id.*)

---

[3] Argenyi claims that his requested attorney rates are justified in part because attorneys licensed to practice law in the District of Nebraska were unlikely to take his case against Creighton because many local attorneys are Creighton alumni.  In opposition to this argument, Creighton directs the Court's attention to 28 discrimination cases filed in the United States District Court for the District of Nebraska against Creighton since 1994.  (Creighton's Br., Filing No. 448 at ECF 10.)  Argenyi does not offer any evidence that any Nebraska attorneys refused to represent him.  The Court is not persuaded that competent and qualified attorneys licensed to practice law in the District of Nebraska would be unwilling to represent a plaintiff in a discrimination case against Creighton.

[4] Mr. Barrett is a partner at Fraser Stryker law firm in Omaha who has practiced in this District since 1983.  (Filing No. 449-6 at ECF 1.)  His practice focuses on employment discrimination and traditional labor law.  (*Id.*)

6

In support of the requested rate for Mr. Stein, Argenyi offers the statements of three Nebraska litigators, Randolph Bragg, William Reinbrecht, and Thomas White. Each opines that the hourly rates requested are reasonable.

Mr. Stein graduated from Princeton University in 2003 and Harvard Law School in 2006. (Aff. of Michael Stein, Filing No. 444-3 at ECF 1.) At Harvard Mr. Stein was Notes Editor for the *Harvard Law Review*. (*Id.*) He served as a law clerk for the Honorable William G. Young in the United States District Court for the District of Massachusetts in 2006-2007. (*Id.*) Mr. Stein was a Skadden Fellow with the National Association of the Deaf from 2007 through 2009. (*Id.* at ECF 2.) Since 2009, he has been a partner with the firm Stein & Vargas, LLP. (*Id.*) He has seven years of experience litigating discrimination cases on behalf of deaf and hard of hearing individuals throughout the United States. (*Id.*) Mr. Stein charges paying clients $325 per hour for representation on similar matters. (*Id.* at ECF 3.)

In Maryland, where Mr. Stein's law firm is located, the federal court's local rules recommend an hourly rate of $165 to $250 for lawyers admitted to the bar for five (5) to eight (8) years.[5] While the Court recognizes that Mr. Stein's accomplishments and specialized experience add value to this litigation, the Court finds that awarding fees based on Mr. Stein's requested rate is unreasonable. Mr. Stein was not lead council in this case; he has only seven years' legal experience; and, even in Maryland, a market with purportedly higher rates than Omaha, Mr. Stein's fees are well above the

---

[5] "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" (Filing No. 444-4 at ECF 14.)

7

guidelines for federal practice. Based on these factors, the Court finds that an hourly rate of $250 is appropriate for Mr. Stein's work on this litigation.

Creighton has not objected to the hourly rates for Ms. Vargas, Ms. DeLair, Ms. Jackson, and Mr. Charmatz. Upon its own review, the Court concludes that those rates are reasonable.

### B.  Total Hours Billed

Creighton argues that the lodestar should be reduced based on Argenyi's partial success, unreasonable settlement demands, and duplicate services rendered. Although Argenyi's attorneys exercised some discretion to guard against duplication of effort and billing for time spent on issues that did not lead to a successful result, the Court finds that the lodestar should be further reduced due to his counsel's duplicative efforts and their failure to excise certain time spent in their attempt to prove that Creighton intentionally discriminated against him.

#### *(i) Duplication of Efforts*

Creighton claims that a substantial amount of time was billed by multiple attorneys performing the same tasks. Courts may reduce attorney hours and fees for duplication or inefficiency where more than one attorney is used. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995). "Time spent by two attorneys on the same general task is not, however, *per se* duplicative" and "[c]areful preparation often requires collaboration and rehearsal." *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998). For example, in *ACLU Nebraska Found. v. City of Plattsmouth, Neb.*, 199 F. Supp. 2d 964, 969 (D. Neb. 2002), the defendants urged the Court to reduce an attorneys' fee award where two of the plaintiff's lawyers were present for

8

meetings, depositions, and the pretrial conference.  *Id.*  The Court determined that these efforts were not duplicative under the circumstances.  *Id.*  The Court also noted that "[w]hen the losing party itself uses multiple counsel, the claim that the prevailing party should not have used multiple counsel fails."  *Id.* (citing *Carhart v. Stenberg*, 11 F. Supp. 2d 1134, 1137-38 (D. Neb. 1998)).

The Court recognizes the billing discretion Argenyi exercised to protect against duplication of efforts and to eliminate hours billed for time spent on losing issues. Argenyi claims he eliminated hours that were redundant, inefficiently spent, insufficiently documented, or devoted to tasks on which Argenyi did not succeed.  Further, Argenyi did not request fees for a paralegal, Josh Shettle, who spent approximately 130 hours working on this case.  (Filing No. 444-5 at ECF 6.)  Argenyi did not request fees for J. Archer Miller, "Of Counsel" at Stein & Vargas, who spent 56.4 hours working on this case.  (*Id.*)  Argenyi's attorneys exercised billing discretion by requesting half their hourly rates for travel.[6]  Mr. Stein did not bill for any time spent in Court during trial, or time spent in meetings with co-counsel during trial.  (*Id.* at ECF 5.)  Mr. Charmatz did not bill for his attendance at the trial, except for an in chambers discussion with co-counsel, opposing counsel, and this Court.

---

[6] Mr. Charmatz did not expressly state in his affidavit that he exercised discretion in billing travel hours, but his billing records only include a total of five (5) travel hours for mediation in Omaha. (Aff. of Marc P. Charmatz, Filing No. 444-5 at ECF 24.)  It appears that Mr. Charmatz may have exercised billing judgment by billing for travel one way.

9

After exercising billing discretion, Argenyi's attorneys reduced their total hours billed by another ten percent to further safeguard against duplication. The Court will apply this ten percent across-the-board reduction for the same reason.[7]

The Court finds that a further reduction is appropriate for duplication of efforts at trial. This case involved a single plaintiff and a single defendant. During trial, Creighton was represented by two attorneys. During portions of the trial, Argenyi was represented by five attorneys. Of his five attorneys Ms. Vargas, Ms. DeLair, and Ms. Jackson participated. Ms. Jackson examined one witness. The Court finds that the presence of Ms. Jackson, Mr. Stein, and Mr. Charmatz during trial was duplicative and unnecessary. Therefore, Argenyi's lodestar will be reduced on these grounds.

The Court will subtract the hours Mr. Stein, Mr. Charmatz, and Ms. Jackson billed for travel to and from Omaha, their time spent in court, and their time spent in conferences with this Court. The Court will not reduce the lodestar for the other hours these three attorneys billed. The following table reflects the hours that will be subtracted from the lodestar based on duplication of efforts during trial:

| Attorney | Travel | Time in Court | Conferences with the Court |
|---|---|---|---|
| Mr. Stein | 14.0 | 0 | 0 |
| Mr. Charmatz | 0 | 0 | 2.5 |
| Ms. Jackson | 13.7 | 35.9 | 0 |

### *(ii) Partial Success*

"The degree of plaintiff's success is 'the most critical factor' in selecting reasonable fee award." *El-Tabech v. Clarke*, 616 F.3d 834, 843 (8th Cir. 2010) (quoting

---

[7] This reduction will be applied after the Court excises other duplicative hours.

10

*Warnock*, 397 F.3d at 1026). "If the plaintiff has won excellent results, he [or she] is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he [or she] did not win . . . .If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained."  *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (quoting *Jenkins by Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997)) (alterations in original).  "There is no precise rule or formula for making these determinations." *Id.* (quoting *Arneson v. Callahan,* 128 F.3d 1243, 1249 (8th Cir.1997)) (internal quotation marks omitted).  In civil rights cases, an award of attorneys' fees does not "depend on obtaining substantial monetary relief" because "damages awards do not reflect fully the public benefit advanced by civil rights litigation." *Id.* (quoting *City of City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)) (internal quotation marks omitted).  When billing statements do not reflect the time spent on each issue, the court may consider the degree to which the prevailing party succeeds in making deductions from attorney's fee awards.  *See Warnock*, 397 F.3d at 1027.

Creighton argues that Argenyi's fees should be reduced by fifty percent based on his limited success in this case.  Creighton's argument is primarily based on Argenyi's failure with regard to the economic relief he requested.  In closing arguments, Argenyi asked the jury to award him $964,000 in compensatory damages.  In requesting injunctive relief, Argenyi stated that the value of his injunctive relief could be as high as $320,000 for the final two years of medical school.  Argenyi was not awarded any of the financial compensation he requested.  However, the jury did return a verdict finding that

11

Creighton discriminated against Argenyi and he was awarded injunctive relief in the form of accommodations for his third and fourth years of medical school.

Argenyi argues that the lodestar should not be further reduced because he already eliminated time spent on unsuccessful issues and only requested fees for time spent on successful issues. Specifically, Argenyi claims he excluded fees for time spent litigating damages and time spent on unsuccessful pretrial motions. The benefit in civil rights litigation is more than just substantial monetary relief, therefore the Court finds Creighton's proposed fifty percent reduction is too great.

The Court acknowledges that Argenyi exercised billing discretion, removing some of the time he spent on unsuccessful issues. However, it is apparent that Argenyi only deleted hours that were identifiable as those spent on losing issues such as time spent litigating damages and time spent on unsuccessful pretrial motions. These deductions do not fully account for the issues on which Argenyi did not prevail. Notably, the jury did not award Argenyi damages because he did not prove that Creighton intentionally discriminated against him.

In his exercise of billing discretion, Argenyi did not account sufficiently for hours billed related to his efforts to prove that Creighton intentionally discriminated against him. Such hours were not merely related to calculating and proving alleged damages. For example, Argenyi's attorneys submitted bills for their time spent in court, in preparing for witness examinations, in client meetings, in preparing opening statements and closing arguments, and in preparing documents such as trial briefs and proposed jury instructions. All of those expenditures of time included Argenyi's efforts to prove that Creighton intentionally discriminated against him. Therefore, a further reduction is

appropriate based on Argenyi's lack of success in persuading the jury that Creighton intentionally discriminated against him, and his consequential lack of success in obtaining compensatory damages.

The Court has reviewed Argenyi's billing records, the record in this case, and the trial record. Based on this review, the Court concludes that approximately twenty percent of the work reflected in Argenyi's attorneys' bills was related to his efforts to prove that Creighton acted intentionally.[8] Accordingly, the Court finds that the lodestar should be reduced by twenty percent.

### *(iii) Settlement Demands*

Creighton argues that a fifty percent reduction in Argenyi's requested attorney fee award is warranted because of his unreasonable settlement demands before trial that unnecessarily prolonged the case. The Court is not persuaded by this argument; therefore, the lodestar will not be reduced on those grounds.

## II. Costs

"[R]easonable out-of-pocket expenses of the kind normally charged to clients by attorneys" are included in a reasonable attorneys' fee award. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996).

### A. Expert Fees

Creighton opposes Argenyi's request for reimbursement of $2,500.00 for expert fees of Dr. Pollard. Creighton argues that because this Court excluded Dr. Pollard as

---

[8] The Court also notes that Argenyi only partly prevailed on his Motion for Injunctive Relief and this twenty percent reduction takes into account Argenyi's failure to excise hours billed for briefing and client counseling regarding injunctive relief.

13

an expert witness, his testimony was not used in support of or in opposition to claims and defenses in this case. Argenyi argues that Dr. Pollard's testimony was used to rebut Creighton's "direct threat" defense, which Creighton withdrew two weeks after Dr. Pollard submitted his expert report. (*See* Service of Expert Witness Report, Filing No. 125 and Creighton's Mot. for Leave to File Second Amended Answer, Filing No. 128.) Argenyi argues that because Dr. Pollard's expert report was necessary to respond to Creighton's assertion of the "direct threat" defense, he should be compensated for Dr. Pollard's expert fees.

On March 21, 2011, Creighton amended its Answer to include a "direct threat" defense. (Filing No. 130.) After the deadline to designate expert witnesses passed, Argenyi was granted leave to designate Dr. Pollard as an expert witness to address Creighton's newly added "direct threat" defense. (Mem. and Order of Magistrate Judge F.A. Gossett, Filing No. 206 at ECF 2.) Subsequently, Creighton withdrew the defense. After Creighton withdrew the defense, Magistrate Judge F.A. Gossett granted Creighton's motion to strike the expert designation of Dr. Pollard because Argenyi was only permitted to designated Dr. Pollard as an expert in response to Creighton's "direct threat" defense, which had been withdrawn. (*Id.*)

Argenyi later listed Dr. Robert Pollard as a non-expert witness expecting to elicit testimony from him on "the question of whether there is a reasonable professional basis to conclude that deaf doctors are better trained without the use of interpreters." (Pl. Brief, Filing No. 298 at 9.) This Court excluded Dr. Pollard as a trial witness on the grounds that Dr. Pollard's opinions were expert in nature and Judge Gossett's Order

precluded Argenyi from designating Dr. Pollard as an expert. (Mem. and Order, Filing No. 330 at ECF.)

The Court finds that Dr. Pollard's fees were reasonably incurred. Creighton chose to assert its "direct threat" defense compelling Argenyi to prepare his response. Creighton chose to withdraw its "direct threat" defense, and it follows that Creighton likely withdrew the defense because of Dr. Pollard's report. Argenyi ultimately prevailed on his discrimination claim against which the "direct threat" defense was originally asserted. (Filing No. 130 at ECF 12.) Therefore, the Court will not deduct costs for Dr. Pollard's expert fees.

B.  Nontaxable Costs

Creighton objects to Argenyi's costs on a number of grounds. As stated above, the Court finds that Mr. Charmatz, Ms. Jackson, and Mr. Stein's attendance at trial was unnecessary. Therefore, the Court will deduct expenses incurred due to their presence at trial. Mr. Charmatz and Ms. Jackson incurred $4,545.19 in costs attending trial. (444-4 at ECF 16.) The Court will also deduct expenses Mr. Stein incurred due to his presence at trial including $637.10 for airfare; $913.96 for accommodations; $56.25 for parking, and $250 for meals.[9] (Filing No. 444-1 at ECF 62-64.) Argenyi's request for nontaxable costs will be reduced by $6,402.50 for costs incurred for Mr. Stein, Ms. Jackson, and Mr. Charmatz's presence in Omaha during trial.

---

[9] Ms. Vargas requested over $800 for meals for Mr. Stein and the "legal team." Ms. Vargas did not itemize each meal; thus, it is difficult to determine the exact amount spent on Mr. Stein's meals. The Court concludes that a reduction of $250, less than one-third of the amount spent on meals, is an appropriate reduction. The Court does not find that a greater reduction is necessary because of the overall reasonableness of Argenyi's meal expenses.

15

Creighton objected to Argenyi's request for reimbursement for CART for "case meetings" between him and his legal counsel in the amount of $975.00 and $245.00 for the services of Margaret Tyska Heaney for the same purpose. (Creighton's Br., Filing No. 448 at ECF 14.) Creighton argues that these expenses are not reimbursable because they are similar to overhead costs.[10] Argenyi cites 28 U.S.C. § 1920(6) in support of his claim that interpreter costs may be awarded. This statute applies to taxable costs and according to this Court's handbook regarding taxable costs,

> Where the prevailing party procured interpretation or translation services without prior court approval, costs will be assessed only for those expenses necessarily incurred. The party requesting costs has the burden to show that the interpretation or translation services were necessary at the time the services were received.

Bill of Costs Handbook § IV(I). Argenyi has failed to show that these interpretation services were necessary. Further, Argenyi requested these sums as nontaxable costs. The Court is not persuaded that these costs qualify as "reasonable out-of-pocket expenses" for services that would normally be charged to a client.[11] *See Pinkham*, 84 F.3d at 294-95. Therefore, they are not properly included in an award for attorneys' fees. Argenyi's request for nontaxable costs therefore will be further reduced by $1,220.00.

---

[10] "Lawyers may not bill clients for general office overhead--that is, routine costs such as 'maintaining a library, securing malpractice insurance, renting of office space, purchasing utilities and the like.'" Rule 1.5 Fees, Ann. Mod. Rules Prof. Cond. s. 1.5, Comment, Expenses Chargeable to Client (quoting ABA Formal Ethics Op. 93-379 (1993)).

[11] On this Motion for Attorneys' Fees and Costs, the Court will not engage in a full legal analysis to determine what aids and services Argenyi's attorneys were required to provide under the ADA, but the Court notes that law offices are specifically included in the list of public accommodations subject to Title III of the ADA. 42 U.S.C. §12181(7)(F). In light of this, the Court finds that it is unlikely that Argenyi's attorneys would bill a paying client for the use of interpreters if those interpreters were necessary for effective communication.

Argenyi requested $2,480.63 in nontaxable costs for costs he requested as taxable costs but were not awarded by the Clerk of the Court ("denied taxable costs"). Argenyi stated in his Brief in Support of his Motion for Attorneys' Fees and Costs that he intended to request denied taxable costs as nontaxable costs. (Filing No. 443 at ECF 30.) Creighton did not object to this request in its opposition brief. However, the Court finds that $2,480.63 is not an accurate total for Argenyi's denied taxable costs. Further, the Court finds that some of these costs are duplicative and unnecessary. Upon review of Argenyi's denied taxable costs, the Court finds that Argenyi should be awarded $774.81 for reasonable costs related to the appeal.[12] Argenyi's nontaxable costs will therefore be reduced by an additional $1,705.82.

Creighton objected to a number of other costs; the Court has considered these objections and concludes that those costs were reasonable.

## CONCLUSION

The Court's lodestar calculation, as summarized by the tables below, amounts to an attorneys' fee award of $449,009.00.

---

[12] The additional amounts requested by Argenyi as denied taxable costs are duplicative and unnecessary. Some of these costs were denied by the Clerk of the Court because Argenyi submitted requests for some amounts twice. (Taxation of Costs, Filing No. 455 at ECF 2 ¶6.) Additionally, out of the total denied taxable costs Argenyi requests, $1,682.82 is for printing of legal documents. Argenyi already submitted a request for half of this amount, $841.41, as nontaxable costs. (Filing No. 444-1 at ECF 62.) Yet, Argenyi is requesting the full amount he paid as a part of his denied taxable costs. This means that Argenyi's total request for these printing services amounts to $2524.23 when he only paid $1,682.82. (Filing No. 430-5 at ECF 7.) At most, Argenyi can be reimbursed for the total amount he paid for these services. Upon review of Argenyi's printing services bill, the Court finds that half of the printing fees were duplicative and unnecessary. Therefore, the Court will only award Argenyi $841.41 for these printing services. Because this amount was already included in Argenyi's request for nontaxable costs, there is no need to include reimbursement for these services as denied taxable costs.

| Attorney | Hours Billed* | Rate | Travel Hours* | Travel Rate | Fee |
|---|---|---|---|---|---|
| Ms. Vargas | 789.1 | $325 | 83.9 | $162.50 | $270,091.25 |
| Ms. DeLair | 360.6 | $225 | 51.7 | $112.50 | $86,951.25 |
| Mr. Stein | 379.7 | $250 | 0 | N/A | $94,925.00 |
| Mr. Charmatz | 230.0 | $350 | 0 | N/A | $80,500.00 |
| Ms. Jackson | 162.5 | $150 | 2.25 | $75 | $24,543.75 |
| **Total** | | | | | $557,011.25 |
| **20% Reduction**** | | | | | $445,609.00 |

*Reflects 10% reduction for duplication of efforts
**reduction for time spent on unsuccessful issues

In addition to the lodestar calculation, Argenyi requests $4,485.00 in attorneys' fees for work on his Reply Brief. Both Ms. Vargas and Mr. Stein worked on the Reply Brief. Mr. Stein's work on this brief was billed at an hourly rate of $300. (Filing No. 451-8.) The Court found that an hourly rate of $250 was appropriate for Mr. Stein's work on this case. Argenyi billed 2.1 hours for efforts to refute Creighton's objection to Mr. Stein's hourly rate. (Filing Nos. 451-8 and 451-2.) Argenyi did not prevail on this issue. Therefore, the Court will reduce the amount requested for work on the reply brief.[13]

The Court will award the following attorneys' fees:

| Lodestar Calculation | $445,609.00 |
|---|---|
| Attorneys' Fees for Reply Brief | $3,400.00 |
| **Total Attorneys' Fees** | $449,009.00 |

The Court will also award $18,998.42 in nontaxable costs, and $10,365.00 for expert fees. The following table summarizes Argenyi's total award:

| Attorney Fees | $449,009.00 |
|---|---|
| Expert Fees | $10,365.00 |
| Costs | $18,998.42 |
| **Total** | $478,372.42 |

---

[13] The Court will award fees for hours worked by Mr. Stein at a rate of $250 per hour. The Court will subtract the hours billed for refuting Creighton's objection to Mr. Stein's rates.

Accordingly,

IT IS ORDERED: Argenyi's Motion for Attorneys' Fees and Costs (Filing No. 442) is granted in part as follows:

1. Argenyi is awarded attorneys' fees as the prevailing party in the litigation of the merits of this case in the amount of $449,009.00;

2. Argenyi is awarded nontaxable costs in the amount of $18,998.42; and

3. Argenyi is awarded $10,365.00 for expert fees.

Dated this 8th day of May, 2014.

>BY THE COURT:
>
>s/Laurie Smith Camp
>Chief United States District Judge