```
 1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEBRASKA
 2

 3      MICHAEL S. ARGENYI,          )
                                     )
 4               Plaintiff,          )          8:09CV341
                                     )
 5          vs.                      )      Omaha, Nebraska
                                     )      August 20, 2013
 6      CREIGHTON UNIVERSITY,        )
                                     )
 7               Defendant.          )

 8

 9

10                            VOLUME I
                      TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE LAURIE SMITH CAMP
            CHIEF UNITED STATES DISTRICT JUDGE AND A JURY
12

13

14

15

16

17

18

19

20      COURT REPORTER:           Ms. Brenda L. Fauber, RDR, CRR
                                  111 S. 18th Plaza
21                                Suite 3122
                                  Omaha, NE 68102
22                                (402) 661-7322

23

24
        Proceedings recorded by mechanical stenography, transcript
25      produced with computer.
```

```
1                        A-P-P-E-A-R-A-N-C-E-S

2

      FOR THE PLAINTIFF:            Ms. Mary C. Vargas
3                                   Mr. Michael S. Stein
                                    Stein Vargas Law Firm
4                                   P.O. Box 522
                                    Emmitsburg, MD 21727
5

6                                   Ms. Dianne D. DeLair
                                    Nebraska Advocacy Services
7                                   134 South 13th Street
                                    Suite 600
8                                   Lincoln, NE 68508

9
                                    Ms. Caroline E. Jackson
10                                  NAD and Advocacy Center
                                    8630 Fenton Street
11                                  Suite 820
                                    Silver Springs, MD 20910
12

13    FOR THE DEFENDANT:            Mr. Scott P. Moore
                                    Ms. Allison D. Balus
14                                  Baird Holm Law Firm
                                    1700 Farnam Street
15                                  Suite 1500
                                    Omaha, NE 68102
16

17

18

19

20

21

22

23

24

25
```

1          (At 8:35 a.m. on August 20, 2013, with counsel for the

2     parties present in chambers, the following proceedings were

3     had:)

4          THE COURT:  Well, there have been a few more motions

5     filed since five o'clock last night, and I can't say that I've

6     had a chance to digest them all.  You've submitted

7     stipulations at filing 353, and so I accept your stipulations.

8          There is a motion for clarification at filing 349.  And I

9     understand that that is just a request that the order in

10    limine regarding reference to pretrial matters and precluding

11    the plaintiff from referring to pretrial matters will also

12    apply to the defendant and the defendant's reference to

13    pretrial matters.  And that seems fair and reasonable.

14         MR. MOORE:  Yes, your Honor.

15         THE COURT:  And there's no objection to that?

16         MR. MOORE:  No.

17         THE COURT:  So plaintiff's motion for clarification

18    at filing 349 is granted.

19         (Phone rings.)

20         THE COURT:  Excuse me, I have to put that on Do Not

21    Disturb.  And Janet has caught it, but I will put it on Do Not

22    Disturb.

23         So that leaves us then with a motion for reconsideration

24    regarding Creighton's undue burden defense as it relates to

25    interpreters during the plaintiff's M1 and M2 years.  And this

1    motion appears at filing 352.

2        And of course, the plaintiff is making a distinction

3    between use of interpreters and use of CART services.  And the

4    plaintiff appears to acknowledge that the defendant is

5    asserting and has asserted in the past the undue burden

6    defense with respect to the CART services used by the

7    plaintiff in M1 and M2.

8        And as I read this motion, the plaintiff wants the

9    defendant precluded from asserting an undue burden defense

10   with respect to interpreters in the clinical setting.

11   Plaintiff's counsel is shaking her head.  And again we're

12   referring to filing 352.  And I will ask counsel for the

13   plaintiff then to clarify for me.

14       MS. VARGAS:  I'm sorry, your Honor.

15       That motion actually deals with the assertion of undue

16   burden with respect to qualified interpreters for M1 and M2

17   for the reason that the defendant has argued in their brief

18   that they will not be asserting undue burden with respect to

19   interpreters for M1 and M2.

20       THE COURT:  And what distinction are you drawing

21   between interpreters and CART services?  With respect to

22   interpreters, are you talking about interpreters using the

23   cued speech to assist the plaintiff in lip-reading during

24   lectures during M1 and M2?

25       MS. VARGAS:  Defendant has asserted and maintained

```
 1    that it will not argue the affirmative defense of undue burden

 2    with respect to what it calls qualified interpreters.  I

 3    certainly understood that to mean oral sign-supported

 4    interpreters.  There aren't any cued speech interpreters in

 5    Nebraska.

 6              THE COURT:  Okay.  And you may need to clarify the

 7    difference between the cued speech interpreters and the oral

 8    sign-supported interpreters because I understand both of those

 9    are different from American Sign Language interpreters.

10              MS. VARGAS:  That's right.

11              THE COURT:  Okay.  I'm learning something here all

12    the time.

13         And Mr. Moore, do you want to explain just what the

14    defendant's assertion is regarding undue burden --

15              MR. MOORE:  Sure.

16              THE COURT:  -- in M1 and M2 years.

17              MR. MOORE:  Sure.  Well, with regard to those areas

18    in which, for M2, Creighton University offered interpreters in

19    the lecture setting, a didactic lecture setting, that alone

20    we've alleged does not create an undue burden on Creighton.

21    Indeed Creighton offered those after it received

22    Dr. Thedinger's letter saying the FM system was ineffective.

23         However, I don't think the defendant is taking the

24    position that, number one, that what Mr. Argenyi requested in

25    total for M1 and M2, which would be interpreters not only in
```

1    that setting but in clinics and in labs and in those other

2    areas, if you look at that as a whole, Creighton believes it

3    can still assert and will still assert the undue burden

4    defense.  Overall I think it's fair for the jury to hear if

5    Creighton University granted Mr. Argenyi the requests that he

6    wanted, the specific requests that he wanted, over a four-year

7    period, how much that would be as compared to the benefit that

8    he's getting.

9        So, yes, we do intend to make arguments to the jury that

10   talks about how much the cost would be if we granted the

11   specific requests that he had because from Creighton's

12   perspective, we understood that either he got all of those or

13   it was insufficient.  So we believe that's relevant and the

14   jury should hear that on the undue burden.

15       THE COURT:  Does that explanation assist the

16   plaintiff, or does the plaintiff still contend that the

17   defendant is now raising a defense that was earlier waived?

18       MS. VARGAS:  Our concern was that it appeared in the

19   order that the defendant would be allowed to assert undue

20   burden with respect to the provision of qualified

21   interpreters.

22       And in response to discovery and in briefing, the

23   defendant conceded that it was not an undue burden to provide

24   qualified interpreters.  That was never supplemented, so there

25   was no reason to conduct further discovery on that.

1          That they're asserting undue burden with respect to CART

2     I think is a separate issue.  We're just in this motion

3     addressing the fact that the defendant has waived and conceded

4     and stated that it will not assert undue burden with respect

5     to the provision of qualified interpreters.

6          THE COURT:  So Mr. Moore's explanation alleviates

7     your concern.

8          MS. VARGAS:  Provided he doesn't actually assert that

9     argument.  We've had an issue ongoing with this litigation

10    with arguments such as issues related to direct threat and

11    interpreters inhibiting patient care that have been waived and

12    then come back up, and we do not want that to happen with the

13    jury.

14          THE COURT:  Okay.  I appreciate the communication

15    between counsel.  I don't think that there is a conflict in

16    your actual positions.

17         And so, what I am going to do is deny filing number --

18    the motion at filing number 352 without prejudice.  And if it

19    appears that the undue burden defense is being raised in a

20    manner that is inconsistent with Creighton's earlier

21    representations and waivers, then you can certainly bring that

22    matter to my attention and we'll address it at that time.

23          MS. VARGAS:  Thank you, your Honor.

24          THE COURT:  I think that that takes care of the

25    currently pending motions as of 8:45.

1            MR. MOORE:  Don't hold your breath.

2            THE COURT:  Let me just talk a little bit about how

3      things are likely to proceed.

4         And again, I apologize for the fact that we need to

5      interrupt these proceedings tomorrow for this patent hearing.

6      That matter was scheduled many, many months ago, and

7      apparently was the only date that the lawyers, who are coming

8      in from all across the country, could all come in.  So the

9      courtroom deputy had locked that in and promised them that

10     date.

11        Then of course, when this matter came back from the

12     Eighth Circuit, we wanted to give it priority as well to bring

13     it to trial because as you know, the case has been pending for

14     about three years now, since -- is it Mr. Ar-gen-yee?

15            MS. VARGAS:  Ar-gen-ee.

16            THE COURT:  -- since Mr. Argenyi brought the action.

17     And we don't want him to have to wait any longer than

18     necessary to get the issues resolved.

19        So we set it at the earliest possible time.  And we will

20     select the jury this morning.  I understand that 21 jurors

21     have arrived.  One juror had a situation where his wife was in

22     an automobile accident, and so he's on his way to the

23     hospital, and he's been excused.

24        And whenever we have an odd number of jurors, you get an

25     even number of strikes, both sides get the same number, and

1    then I take off whoever is remaining at the bottom of the

2    list.  So, I take the last strike, but I exercise no

3    discretion in taking that last strike.

4        We will plan to have a jury of 12.  But if for some

5    reason someone gets sick or unable to come, then we'll proceed

6    with the number that we have available.

7        As you know, I do generally the bulk of the voir dire.

8    And usually we allocate 10 minutes per side for voir dire, 20

9    minutes per side for opening statement, and 30 minutes per

10   side for closing argument.

11       But those time limitations are flexible.  And if you

12   believe in this case that you require more time than that, let

13   me know, and this is the point where we negotiate this.

14       Sometimes lawyers come in from California or New York,

15   and they think they're going to spend days in voir dire.  And

16   we just don't do that here.  That's not the way we do

17   business.  So we're just trying to get a fair jury.  We're not

18   trying to ensure that anybody wins or loses the case in voir

19   dire.

20       So I will ask the plaintiff, first, if those time limits

21   are adequate or if you believe that you need a little bit more

22   in any one of those three areas.

23       MS. VARGAS:  I certainly think the time is adequate,

24   your Honor, for the voir dire.  We think that the 20 and 30

25   minutes are also probably sufficient for opening and closing.

1           THE COURT:  Okay.  Very good.

2       And the defense?

3           MR. MOORE:  I wouldn't mind five more minutes for

4    voir dire.  I think the opening and closing I'm absolutely

5    fine with those.  I think there are -- this will be the first

6    time the jury hears this, and there's some -- as we discussed

7    this morning, there are some complex issues as to what's going

8    on as far as the different types of speech and those kind of

9    things.

10      And there's a broad base of folks who could have been

11   impacted by something like that; moreover with the article

12   that appeared in the World-Herald, I want to be sure we

13   understand who saw what and who read what.  I'd request five

14   more minutes, 15 minutes for voir dire.

15          THE COURT:  That's fine.  Both sides get 15 minutes

16   for voir dire.

17      The courtroom deputy will help you with the use of

18   lights.  We have lights out there like we have at the Nebraska

19   Supreme Court or Nebraska Court of Appeals.  So the light's

20   green when you have time to talk; and it's red when your time

21   is up.

22      And then it's up to you how you want the yellow light to

23   come on for a warning.  If you want a five-minute warning or

24   two-minute warning, just let the courtroom deputy know, and

25   she should set that up for you.

1          And they'll be set up on the bench.  Oftentimes we have

2    them at the podium, but you may not want to use a podium, so

3    we'll have them where they're visible to everybody at the

4    bench.

5          MR. MOORE:  So I understand, are we at table during

6    voir dire or...

7          THE COURT:  You can be where you want to be.

8          MR. MOORE:  Okay.

9          THE COURT:  And that's a good thing to discuss at

10   this juncture because I want to make sure that everybody has a

11   fair opportunity to be heard and that nobody gets blocked by a

12   podium.  We are not too formal about standing up whenever you

13   speak.  We just want to make sure that you are heard and that

14   you can communicate in the courtroom.

15        So if you stay by a microphone at all times, that's the

16   most important thing, especially since we are having not only

17   the real time, but the CART services provided to the plaintiff

18   and to counsel.  We need to make sure that the court reporters

19   can hear everything that's being said; and that the jury, of

20   course, hears everything.

21        MR. MOORE:  Were I to leave counsel table, which I

22   would prefer to do at least for opening and closing, normally

23   I would stand -- the jury's here, I would stand by the table

24   there.  I'm not sure how I can be picked up by a microphone.

25   Normally if someone is standing at the podium, the microphone

1    is in front of them.

2              THE COURT:  Show me where you're --

3              MR. MOORE:  The jury box is here and here's our

4    table.  Normally I would stand right there and put my notes on

5    that table.

6              THE COURT:  So the bench is up here and that's where

7    you want to be?

8              MR. MOORE:  So I'm -- I would like to be able to do

9    that and I'm trying to figure out how to be close to a

10   microphone.

11             THE COURT:  As long as you're not moving around --

12             MR. MOORE:  Okay.

13             THE COURT:  -- we can turn that mike toward you and

14   that ought to be able to pick up the sound fine.  And Brenda

15   is nodding.

16             MR. MOORE:  Very good.

17             THE COURT:  Sometimes we have lawyers who like to

18   wander.

19             MR. MOORE:  Yes, right.

20             THE COURT:  Then the sound comes in and out and

21   that's what we want to avoid.

22             MR. MOORE:  Fortunately I talk with my hands so I

23   can't move at the same time.  So we should be okay with that.

24             THE COURT:  We've had some lavaliere mikes or lapel

25   likes used from time to time, but I think that this is the

1    better option.

2              MR. MOORE:  Very good.  Thank you.

3              THE COURT:  There are certain things we try to avoid

4    saying in the courtroom because it leads to redaction issues.

5    And the things you want to try to avoid, which shouldn't be a

6    problem in this case, are Social Security numbers, bank

7    account numbers, exact addresses -- so rather than asking

8    somebody "where do you live," and then they spit out their

9    exact home address, you might say, "what town are you from,"

10   or something along those lines -- full names of minor children

11   and birth dates, exact birth dates.  And these are for obvious

12   reasons, but things get uploaded onto the Internet, and we

13   just want to protect people's privacy and avoid identity

14   theft.

15        As far as schedule is concerned, I'll be going down to

16   meet with the jury for orientation at nine o'clock, and then

17   you're free to set up in the courtroom.

18        Our courtroom deputy this week is Mary Roundtree.  And

19   she'll be bringing up the jurors and getting them seated for

20   the voir dire.

21        We'll try to start that around 9:30.  We never go for

22   longer than two hours without a break, so we take a

23   mid-morning break, we take a noon break that will be at least

24   an hour, and a mid-afternoon break.  We won't get that far

25   today because we're going to stop after voir dire and

1    preliminary instructions.

2         And then we'll start again on Thursday morning at nine

3    o'clock.  And we have all day Thursday and all day Friday.  We

4    don't have Monday because I do sentencings all day Monday.

5    That's just the way our schedule works.  So we'll start again

6    then Tuesday morning at nine o'clock, and proceed until we're

7    finished.

8         And I understand your estimate was about four days; is

9    that still --

10        MR. MOORE:  Yes.

11        THE COURT:  Okay.  And in the voir dire, one thing I

12   go through is the list of witnesses who may be called.  And I

13   plan to go through all the names that you've listed for me.

14   If you know that somebody is not going to be called, you're

15   welcome to tell me.  But otherwise I'll read all the names and

16   inquire if anyone knows anyone.

17        Brenda and Rachel, anything I'm forgetting to cover?

18        LAW CLERK:  Not that I can think of.

19        MS. VARGAS:  I do have a few questions.

20        First of all, with respect to one of the jurors in the

21   pool, there is a Creighton University pharmacology professor

22   who is among the jury pool.  And I just wanted to ask if her

23   time might be more appropriately spent on another jury.

24        THE COURT:  Well, I think --

25        MS. VARGAS:  In deference --

1          THE COURT:  That's probably right.  But -- and this

2     was brought to my attention, too.  But I don't like to

3     interject myself early on in the jury selection process by

4     saying oh, let's boot this person, this person's obviously

5     going to be conflicted out.

6       I think it's a better practice in the interests of

7     justice to have the people appear and explain their potential

8     conflict.  And then if there's a request by counsel that the

9     person be excused for cause, then I'll excuse them.  And you

10    don't have to waste a peremptory strike.

11         MS. VARGAS:  Your Honor, I'm actually more concerned

12    about the potential for tainting the jury pool, given the

13    degree of connection, that it's a pharmacology professor for

14    the defendant, and the defendant's being sued with respect to

15    a professor's -- well, professors will be testifying.  And my

16    concern is what she might say to other jurors or in the

17    presence of other jurors that would really taint the rest of

18    the pool to no huge benefit.

19         THE COURT:  All right.  So you're moving at this

20    point in time to strike this juror for cause?

21         MS. VARGAS:  Yes, your Honor.

22         THE COURT:  Any objection?

23         MR. MOORE:  I would say yes, your Honor.  I don't

24    think we've had an opportunity to talk with her.  And I think

25    we have to understand that she can't be a fair and impartial

1    juror.

2         I think there's some risk on our side.  She's an employee

3    of the pharmacy school.  There's some risk on our side that

4    she may not like Creighton, I don't know.  But I think in the

5    interests of justice that we should at least have the

6    opportunity to talk to her.

7              THE COURT:  And that's the standard process that we

8    use.  I've never -- I can't remember ever striking a juror

9    from the pool before we went into the voir dire process.

10        What I will do is downstairs in the orientation that I

11   give, I will caution the jurors at that point in time not to

12   discuss anything among themselves about the case or about

13   their own employment or personal lives so that we limit any

14   potential discussion among the jurors.

15        And then certainly during the voir dire process, if you

16   want to inquire about whether anybody has talked to this juror

17   before the trial has begun, you can inquire about that.

18        We've had people who have ended up on juries that I never

19   thought would end up on juries because nobody has either asked

20   to strike them for cause or nobody has exercised a peremptory

21   strike, and they've ended up being fair jurors.

22        So I don't want to jump the gun on this.  But, that much

23   I will do during the orientation.  I'll caution the jurors not

24   to visit with each other either about the case or about their

25   own backgrounds.

1          And you have some other things?

2          MS. VARGAS:  I'm sorry, I'm from Maryland, so forgive

3    me for not knowing the process as well for jury selection.

4          Would you be able to help me understand a little bit more

5    about how you'll be conducting voir dire and how you'd like us

6    to handle follow-up questions we have -- and at some point

7    you'd like us to raise our objections -- so that we don't

8    interrupt your questioning, but we ask at an appropriate time.

9          THE COURT:  Well, when I -- sometimes it's obvious

10   during my portion of the voir dire that someone is not going

11   to be able to be a fair and impartial juror.  And at that

12   juncture, generally what I've done is I've looked to counsel

13   and I've said, "Is there a request to excuse this juror for

14   cause," so that I'm not booting them.

15         And if for any reason you feel that you don't want to

16   move to strike a juror for cause in front of the jury, but you

17   want to do it more discreetly, then we can have a sidebar.

18   You can just say, "I'd request a sidebar, your Honor," and

19   we'll do a sidebar.  And then you can say, "Yes, I'd please

20   like to strike this juror for cause."  And that way you don't

21   have to be concerned that anybody on the jury is going to

22   think that you're mean by striking the person.

23         MS. VARGAS:  Thank you.

24         THE COURT:  And at any time if you want to be heard,

25   it's not going to offend me if I'm in the voir dire process

1    and you stand, I'll recognize you, and at that time you can

2    either make your motion or request a sidebar.

3        And then you'll also have plenty of opportunity during

4    your own voir dire.  You can follow up with additional

5    questions and then you can make your motion or request a

6    sidebar.

7        MS. VARGAS:  To make sure I understand, during the

8    attorney voir dire, would you like us to make our -- any

9    motions we might have during our time or save them for the end

10   of our time?  How would you like us to handle that?

11       THE COURT:  Generally the lawyers make their motions

12   during the voir dire as it becomes apparent that somebody is

13   not going to be fair and impartial.  And then they'll just

14   turn to me and say, "Your Honor, I would request that this

15   juror be excused from serving on this panel."

16       And I might follow up with a few more questions if I

17   think it's possible that the juror could be fair and

18   impartial, but oftentimes I agree.  But I'm not usually the

19   one who says, you know, "You can leave."  I usually defer to

20   the lawyers and get a request from one or both of the lawyers

21   to excuse the juror.

22       MS. VARGAS:  Thank you.

23       I think the other question I had, are there any limits

24   that your Honor would set on what counsel can say about the

25   case in terms of not giving opening statements during attorney

```
1    voir dire?

2          THE COURT:  And that's always an issue.  Some

3    people -- I was a lawyer, too.  Sometimes I would use voir

4    dire as an opportunity to plant the seeds about what my case

5    was about and try to persuade people that I had a good case.

6        Yeah, if there's -- if you start making opening statement

7    during the voir dire, and there's an objection, I'm likely to

8    sustain the objection.

9        And one clue is when, instead of asking a question of the

10   jury panel, a lawyer begins a narrative.  And that's when we

11   usually see the objection.  And then I may say, "Sustained.

12   Counsel, please ask a question of the jury."

13          MS. VARGAS:  Thank you.

14          MS. DeLAIR:  I just have one question, your Honor.

15   And I'm not sure if this is the appropriate time, but

16   plaintiff would like to make a motion so that the witnesses

17   are sequestered during the trial.

18          THE COURT:  This is a good time to do that and I

19   usually try to remember to ask about that.  And I assume

20   that's reciprocal?

21          MR. MOORE:  We would make the same motion, all

22   witnesses, including the expert witnesses, be sequestered.

23          THE COURT:  All witnesses will be sequestered.  We

24   will -- it will be reciprocal.  We will post a sign on the

25   door.  And I ask counsel to help me to enforce that by warning
```

1    their witnesses not to come in until it's their time to

2    testify.

3         And if you see somebody coming in who shouldn't come in,

4    please bring that to my attention because I don't know what

5    your witnesses look like.

6         Anything else?

7         MS. DeLAIR:  One more question, your Honor, about

8    possibly preadmitting the exhibits that both parties have

9    stipulated to.

10        THE COURT:  Sometimes this is done at the pretrial

11   conference, but it was not done here.

12        Let's take a moment to do that.  I'd be happy to do that.

13        MR. MOORE:  Yes, just a second.

14        THE COURT:  I'm looking at the joint trial exhibit

15   list, filing 286.  And is this the most recent one?

16        MR. MOORE:  I believe so, your Honor.  I don't have

17   the filing number in front of me.

18        LAW CLERK:  It's the one both parties submitted with

19   their exhibit binders, so -- unless that's changed.

20        MR. MOORE:  That should be correct.

21        THE COURT:  Very good.

22        So you're asking me to go ahead and receive into evidence

23   the exhibits that are marked as offered but where there is no

24   objection noted.  Is that fair?

25        MS. VARGAS:  Your Honor, there are four exhibits, I

1      believe they're number 16 through 19 that were covered already

2      by your Honor's ruling on the stipulations.  Those are the

3      letters from Dr. Backous and Stacy Watson to the defendant.

4      And we were able to agree among ourselves that we would not

5      have any objection to those documents being admitted, and they

6      were part of the stipulations.

7              MR. MOORE:  That's 16 through 19; yes, we agree, your

8      Honor.

9              THE COURT:  All right.  16 through 19 are received.

10             MR. MOORE:  From defendant's point of view, there's

11     several exhibits that there are no objections noted to on the

12     trial exhibit list that we'd like to -- we can just offer them

13     at this time.  And that would be 1, 2 -- I'm sorry, 1 through

14     9, 11 through 13, 20, 34 and 35, 203, and 213.

15             MS. VARGAS:  Your Honor, I apologize.  I don't

16     actually have that exhibit list in here with me.  Is it

17     possible that we could address this Thursday morning before

18     opening statements?

19             THE COURT:  That's fine with me.

20             MR. MOORE:  If we could deal with it now, I'd rather,

21     as we prepare for the first day and opening.  That will help

22     guide us with regard to what we can say in opening.  I don't

23     want to make any promises to the jurors that...

24             THE COURT:  I'll tell you what, this will be easy.

25     What we're going to do is I'm going to make you a copy of

```
 1      mine.

 2           (Off-the-record discussion had.)

 3           THE COURT:  Just to review, the defendant is offering

 4      first Exhibits 1 through 9.  Any objection?

 5           MS. VARGAS:  We have no objection, your Honor.

 6           THE COURT:  Exhibits 1 through 9 are received.

 7      Defense is offering 11 through 13.  Any objection?

 8           MS. VARGAS:  No objection, your Honor.

 9           THE COURT:  11 through 13 are received.

10      Exhibit 20.

11           MS. VARGAS:  We have no objection, your Honor.

12           THE COURT:  Exhibit 20 is received.

13      Exhibits 34 and 35.

14           MS. VARGAS:  We have no objection.

15           THE COURT:  34 and 35 are received.

16      Exhibit 203.

17           MS. VARGAS:  No objection.

18           THE COURT:  203 is received.

19      And Exhibit 213.

20           MS. VARGAS:  No objection.

21           THE COURT:  Exhibit 213 is received.

22      Does the plaintiff wish to offer any exhibits into

23      evidence at this time that you think the defense has no

24      objection to?

25           MS. VARGAS:  Not at this time, your Honor.  Thank
```

 1     you.

 2          THE COURT:  Very good.

 3       Anything further?

 4          MR. MOORE:  A couple questions, your Honor.  And

 5     again this is in preparing for Thursday.  If the plaintiff

 6     calls one of our witnesses whom we've listed in their case in

 7     chief, can we get them done when they're on the stand rather

 8     than having to have them come back?

 9          THE COURT:  Generally counsel cooperate on this issue

10     for the convenience of the witnesses.  And I have to leave it

11     to you to cooperate though with each other.  If counsel don't

12     cooperate, you have to call the witness back.  Otherwise you

13     can't go outside the scope of the direct examination.

14          MR. MOORE:  Can we get them done when you call them,

15     so we don't have to call them back next week?

16          MS. VARGAS:  I guess this raises another question for

17     us in terms of what your Honor would like us to do with

18     respect to rebuttal.

19       In this case, the issue of undue burden is an affirmative

20     defense, and so this hinges in some part on how we handle that

21     issue.  We would not be intending to put on a defense to

22     something that they've not yet offered in our case in chief.

23       So would we be permitted and should we expect that we

24     can -- if that defense is asserted, and once we understand the

25     boundaries of that defense, then be permitted to have rebuttal

 1     on those issues?

 2         And it raises the concerns, it may be some of our own

 3     witnesses who might need to come back to the stand.

 4             THE COURT:  Well, I'll try to address that in this

 5     way, and I'm not sure if it will answer your question.

 6         If you call a witness, whether it's one of the

 7     defendant's witnesses or not, and you agree that counsel can

 8     go outside the scope of direct on the cross-examination to try

 9     to avoid having to bring the witness back again in connection

10     with the defendant's case, then you, of course, would have

11     your redirect and cross.  And then counsel for the defense

12     would have an opportunity to do what effectively is redirect.

13         Generally -- I'll mention this too because this may be a

14     little different from what you do back east -- we don't

15     generally allow recross.  So it's -- as a general rule.  And

16     this is actually in our local rules.  You have your direct,

17     you have your cross, you have your redirect, and that's it.

18         But, if you come to an agreement that you can go outside

19     the scope of direct examination on the cross, that's

20     effectively your direct as well, and then you have that one

21     extra turn.

22         And then I can instruct the jury regarding affirmative

23     defenses and what they can consider the evidence for and what

24     they can't consider the evidence for.

25         I guess that's really the only answer I have for you at

 1     this point in time.

 2          MR. MOORE:  Can I ask Mary, are you concerned that

 3     for lack of a better term, somehow we'd sandbag and something

 4     would come up in the case and you wouldn't have the

 5     opportunity to examine them again in a --

 6          MS. VARGAS:  That's not so much my concern, Scott.

 7     My concern is more that it really blurs the burdens.  The

 8     burden of proof is on a different party with respect to the

 9     case in chief versus the affirmative defense.

10     So we would not be inclined to allow on cross going

11     outside the scope of direct.  But we understand that you

12     obviously have a right to assert and put on your case with

13     respect to the parts of the case that you bear the burden on,

14     so undue burden.

15     There's also an issue that the defenses have changed

16     rather significantly on a month-to-month basis.  And so for us

17     to preemptively guess what the defenses might be and what the

18     bounds of those defenses are would prejudice us.

19     So we'd rather that we put on our case, you put on your

20     case; and then to the extent you've asserted an affirmative

21     defense, we have an opportunity to rebut that.

22          THE COURT:  And all I can tell you is I have to leave

23     this in the hands of counsel.  And if you can work something

24     out, that's fine.  If you can't, then the defense will need to

25     call its witnesses when it's the defendant's turn.

1        MS. VARGAS:  Then if we had a witness in our case in

2    chief, would we be permitted to recall that person in rebuttal

3    if they needed to address something that was raised for the

4    first time as an affirmative defense?

5        THE COURT:  Sure.

6        MR. MOORE:  Just so I understand, we've got to call

7    our witnesses twice because -- this is going to be really

8    tough.  We've got -- you subpoenaed everybody on our side

9    pretty much for both Thursday and Friday.  And they're going

10   to all show up then.  And you'll make them all come back next

11   week because this is really --

12       MS. DeLAIR:  Can I -- it's my understanding,

13   according to the rules, that we submit a list of who we

14   believe will be testifying and we do that a day before, so I

15   think that might alleviate some of your concerns, Scott.

16       MR. MOORE:  Okay.  I want to talk more about that,

17   but I understand, your Honor.

18       THE COURT:  I want the lawyers to talk about that

19   among themselves.  If there's anything else you need me for,

20   I'll answer your other questions if I can.  Then I need to get

21   down to meet with the jury.

22       MS. VARGAS:  I do have -- I'm very sorry.  In terms

23   of the jury, will we know what order they're being seated in?

24       THE COURT:  You will have a seating chart that will

25   lay out for you their names with stickers.  And if for some

1    reason we need to replace, like excuse a juror -- we're not

2    going to have to replace any other juror.  We have to do that

3    in criminal cases because we have a bigger pool.

4         But here we're going to have everybody seated, and

5    everybody will be stickered on your chart.  And you will be

6    able to see exactly where they're seated, what their name is,

7    whether they're married or single, how many kids they have,

8    and where they work.  It will all be on that sticker.

9         And I'm not good with names and faces, so I have to rely

10   on the stickered chart.  So that will be available to you.

11        MS. VARGAS:  My question is more about how we know

12   which are the 12 that are first up in the box.  And then do we

13   know which order they're replaced in?

14        MR. MOORE:  They'll all be in the box at one time.

15        MS. BALUS:  They're all seated in the box.

16        MS. VARGAS:  But all 21 won't be sitting for the

17   case.  So how will we know --

18        MS. BALUS:  From the end into the box.  There's like

19   chairs in front of the box; if we strike those people, even if

20   they're still sitting there, they won't...

21        THE COURT:  We're going to start off with 21.

22   They're all going to be over there in the box area.  Some of

23   them will sit in front of the box.

24        You'll have your chart showing where they're all seated.

25   And then if somebody is excused for cause, they'll leave.

1    When nobody else has been excused for cause, then Mary

2    Roundtree, the courtroom deputy, will go back and forth for

3    you to exercise your peremptory challenges.  You'll get an

4    even number of peremptory challenges.  And if there's an

5    odd -- if there are 13 jurors left, I will strike the last

6    one, based upon the numerical list; just take the one off the

7    bottom.  And I think it will all become very clear when you go

8    out there.

9         MS. VARGAS:  Let's say after the issues with cause

10   are addressed and the peremptory challenges are handled, if

11   there are, say, 15 jurors remaining, how does that...

12        THE COURT:  I'm going to let you exercise as many

13   peremptory challenges as are needed to get it down to 12 or

14   13.

15        MS. VARGAS:  Okay.

16        THE COURT:  Usually we try not to call more jurors

17   than we really need.  So usually I think the rule is you get

18   three strikes per side.

19      But, you can exercise the number of strikes necessary to

20   get it down to 12 or 13.  If it's 13, I just take off the last

21   one.

22        MS. VARGAS:  So there will not be an alternate, there

23   will be 12.

24        THE COURT:  There will be no alternate.  We have the

25   alternate in the criminal cases but not the civil cases

1    because if we lose one, we lose one.  It doesn't matter.

2              MS. VARGAS:  Thank you very much.

3              THE COURT:  I will see you in the courtroom.

4         (Concluded in chambers at 9:25 a.m.)

5         (Jury selected and sworn.)

6              THE COURT:  Ladies and gentlemen of the jury, I am

7    now going to be giving you some instructions about this case

8    and about your duties as jurors.  At the end of the trial I'll

9    give you more instructions.  I may give you some instructions

10   during the trial.  All instructions, those I give you now and

11   those I give you later, whether they are in writing or given

12   to you orally, are equally important and you must follow them

13   all.

14        As I mentioned earlier, this is a civil case brought by

15   the plaintiff, Michael Argenyi, against the defendant,

16   Creighton University.

17        The defendant is a place of public accommodation for

18   purposes of Title III of the Americans with Disabilities Act

19   which we also refer to as the ADA.  And Creighton is a

20   recipient of federal financial assistance for purposes of

21   Section 504 of the Rehabilitation Act of 1973 that I will

22   refer to as the Rehabilitation Act.

23        The plaintiff has a disability as the term is defined by

24   the Americans with Disabilities Act and the Rehabilitation

25   Act.

1       The plaintiff was admitted to the defendant's medical

2   school and alleges that the defendant violated his rights

3   under the Americans with Disabilities Act and the

4   Rehabilitation Act by failing to provide him with

5   accommodations and auxiliary aids and services he claims were

6   necessary to ensure effective communication.

7       The plaintiff also alleges that the defendant acted with

8   deliberate indifference when it denied him the auxiliary aids

9   and services he requested.

10      Creighton University denies Mr. Argenyi's allegations and

11  asserts that it provided him reasonable and necessary

12  accommodations and auxiliary aids and services and did not

13  discriminate against him in any way.  The defendant asserts as

14  its affirmative defense that providing the plaintiff with the

15  auxiliary aids and services he requested would have posed an

16  undue burden on it.

17      It will be your duty to decide from the evidence which

18  party is entitled to your verdict.  Your verdict -- excuse me.

19  Your duty is to decide what the facts are from the evidence.

20  You are allowed to consider the evidence in light of your own

21  observations and experiences.

22      After you have decided what the facts are, you will have

23  to apply those facts to the law which I give you in these and

24  in my other instructions.  That is how you will reach your

25  verdict.

1    Only you will decide what the facts are.  However, you

2    must follow my instructions, whether you agree with them or

3    not.  You have taken an oath to follow the law that I give you

4    in my instructions.

5    In deciding what the facts are, you may have to decide

6    what testimony you believe and what testimony you do not

7    believe.  You may believe all of what a witness says or only

8    part of it or none of it.

9    In deciding what testimony to believe, consider the

10   witness's intelligence, their opportunity to have seen or

11   heard the things they testify about, their memories, any

12   reasons they might have to testify a certain way, how they act

13   while testifying, whether they said something different at

14   another time, whether their testimony is generally reasonable,

15   and how consistent their testimony is with other evidence you

16   believe.

17   Do not let sympathy or your own likes or dislikes

18   influence you.  The law requires you to come to a just verdict

19   based only on the evidence, your common sense, and the law

20   that I gave you in my instructions, and nothing else.

21   Nothing I say or do during this trial is meant to suggest

22   what I think of the evidence or what I think your verdict

23   should be.

24   When I use the word evidence, I mean the testimony of

25   witnesses, documents and other things I receive as exhibits,

1    facts that I tell you the parties have agreed are true, and

2    any other facts that I tell you to accept as true.

3         Some things are not evidence.  I will tell you what is

4    not evidence.

5         Lawyers' statements, arguments, questions, and comments

6    are not evidence.  Documents or other things that might be in

7    court or talked about but that do not -- that I do not receive

8    as exhibits are not evidence.

9         Objections are not evidence.  Lawyers have a right and

10   sometimes a duty to object when they believe something should

11   not be part of the trial.  Do not be influenced one way or the

12   other by objections.  If I sustain a lawyer's objection to a

13   question or an exhibit, that means the law does not allow you

14   to consider that information.  When that happens, you must

15   ignore the question or the exhibit and must not try to guess

16   what the information might have been.

17        Testimony and exhibits that I strike from the record or

18   tell you to disregard are not evidence, and you must not

19   consider them.

20        Anything you see or hear about this case outside the

21   courtroom is not evidence and you must not consider it.

22        Also, I might tell you that you can consider a piece of

23   evidence for one purpose only and not for any other purpose.

24   If that happens, I will tell you what purpose you can consider

25   the evidence for and what you are not allowed to consider it

1    for.

2         You need to pay close attention when I give an

3    instruction about evidence that you can consider for only

4    certain purposes because you might not have that instruction

5    in writing later in the jury room.

6         Some of you may have heard the terms direct evidence and

7    circumstantial evidence.  You should not be concerned with

8    those terms because the law makes no distinction between the

9    weight to be given to direct and circumstantial evidence.

10        During the trial I will sometimes need to talk privately

11   with the lawyers.  I may talk with them here at the bench

12   while you are in the courtroom; or I may call a recess and let

13   you leave the room while I talk with the lawyers.

14        Either way, please understand that while you're waiting,

15   we're working.  We have these conferences to make sure that

16   the trial is proceeding according to the law and to avoid

17   confusion or mistakes.  We will do what we can to limit the

18   number of these conferences and to keep them as short as

19   possible.

20        At the end of the trial you will have to make your

21   decision based on what you recall of the evidence.  You will

22   not have a written copy of the testimony to refer to.  Because

23   of this, you have to pay close attention to the testimony and

24   other evidence as it is presented here in the courtroom.

25        If you wish, however, you may take notes to help you

1    remember what witnesses say.  If you do take notes, do not

2    show them to anyone until you and your fellow jurors go to the

3    jury room to decide the case after you have heard and seen all

4    of the evidence.  And do not let taking notes distract you

5    from paying close attention to the evidence as it is

6    presented.

7         The clerk will provide each of you with a pad of paper

8    and a pen or pencil.  At each recess, leave them in the jury

9    room.  When you leave at night, your notes will be locked up

10   and will not be read by anyone.

11        To make sure this trial is fair to all parties, you must

12   follow these rules:

13        First, do not talk or communicate among yourselves about

14   this case or about anyone involved with it until the end of

15   the case when you go to the jury room to consider your

16   verdict.

17        Second, do not talk with anyone else about the case or

18   about anyone involved with it until the trial has ended and

19   you have been discharged as jurors.

20        Third, when you are outside of the courtroom, do not let

21   anyone tell you anything about this case or about anyone

22   involved with it until the trial has ended and your verdict

23   has been accepted by me.  If someone tries to talk to you

24   about this case during the trial, please report it to my

25   courtroom deputy.

1    Fourth, during the trial, do not talk with or speak to

2    any of the parties, lawyers, or witnesses in this case, not

3    even to pass the time of day.  It is important not only that

4    you do justice in this case, but also that you act

5    accordingly.  If a person from one side of the lawsuit sees

6    you talking to a person from the other side, even if it is

7    just about the weather, that might raise a suspicion about

8    your fairness.

9    So when the lawyers, parties, and witnesses do not speak

10   to you in the halls or on the elevator or the like, you

11   understand they are not being rude.  They know they are not

12   supposed to talk to you while the trial is going on, and they

13   are just following the rules.

14   Fifth, you may need to tell your family, close friends,

15   and other people that you are part of this trial.  You can

16   tell them when you have to be in court, and you can warn them

17   not to ask you about this case, tell you anything they know or

18   think they know about the case, or talk about this case in

19   front of you.

20   But you must not communicate with anyone or post

21   information about the parties, witnesses, participants,

22   claims, evidence, or anything else related to this case.  You

23   must not tell anyone anything about the jury's deliberations

24   in this case until after I accept your verdict or until I give

25   you specific permission to do so.

1        If you talk about the case with someone besides the other

2   jurors during deliberations, it looks as if you might already

3   have reached a decision or that you might be influenced in

4   your verdict by their opinions.  That would not be fair to the

5   parties, and it might result in the verdict being thrown out

6   and the case having to be tried over again.

7        During the trial, while you are in the courthouse, and

8   after you leave for the day, do not give any information to

9   anyone by any means about this case.  For example, do not talk

10  face to face, use any electronic devices such as a telephone,

11  cell phone, smart phone, BlackBerry, PDA, computer or

12  computer-like device.  Likewise, do not use the Internet or

13  any Internet service, do not text or send instant messages, do

14  not go on an Internet chat room, blog, or other Web site such

15  as Facebook, My Space, YouTube or Twitter.  In other words, do

16  not communicate with anyone about the case except for the

17  other jurors during deliberations until I accept your verdict.

18       Sixth, do not do any research on the Internet, in

19  libraries, newspapers, or otherwise, and do not investigate

20  this case on your own.  Do not visit or view any place

21  discussed in this case and do not use the Internet or other

22  means to search for or view any place discussed in the

23  testimony.  Also do not look up any information about the

24  case, the law, or the people involved, including the parties,

25  the witnesses, the lawyers or me.

1     Seventh, do not read any news stories or Internet

2     articles or blogs about the case or anyone involved with it,

3     do not listen to any radio or television reports about the

4     case or anyone involved with it.  Until the trial is over you

5     may want to avoid reading newspapers and let them accumulate

6     until the trial is finished.

7     The parties have a right to have you decide their case

8     based only on evidence admitted here in court.  If you

9     research, investigate, or experiment on your own, or get

10    information from other sources, your verdict might be

11    influenced by inaccurate, incomplete, or misleading

12    information.  Witnesses in court take an oath to tell the

13    truth and the accuracy of their testimony is tested through

14    cross-examination.

15    All of the parties are entitled to a fair trial and an

16    impartial jury, and you have to conduct yourselves in a way

17    that assures the integrity of the trial process.  If you

18    decide a case based on information not admitted in court, you

19    will deny the parties a fair trial.  You will deny them

20    justice.  You have taken an oath to follow the rules and you

21    must do so.  If you do not, the case may have to be retried or

22    you could be held in contempt of court and possibly punished.

23    Eighth, do not make up your mind during the trial about

24    what your verdict should be.  Keep an open mind until after

25    you and your fellow jurors have discussed all the evidence.

1          The trial will proceed in the following manner:  First,

2     the plaintiff's lawyer may make an opening statement.  Next,

3     the defendant's lawyer may make an opening statement.  An

4     opening statement is not evidence but is a summary of the

5     evidence the lawyers expect you will see and hear during the

6     trial.

7          After opening statements, the plaintiff will then present

8     evidence.  Counsel for the defendant will have the chance to

9     cross-examine the plaintiff's witnesses.  After the plaintiff

10    has finished presenting his case, the defendant may present

11    evidence and plaintiff's counsel will have a chance to

12    cross-examine the defendant's witnesses.

13         After you've seen and heard all the evidence from all

14    sides, the attorneys will make closing arguments that

15    summarize and interpret the evidence.  Just as with opening

16    statements, closing arguments are not evidence.

17         After the closing arguments I will instruct you further

18    on the law.  And you will go to the jury room to deliberate

19    and decide your verdict.

20         When we take a recess, you'll be shown to the jury room

21    which is open for your use.  At the end of each recess during

22    the day, please return and assemble in the jury room.  The

23    courtroom deputy will come for you when court is ready to

24    resume.  No one may enter the jury room other than jurors and

25    court employees.

1              If you need to communicate with me during trial, please

2        do so only in writing by preparing a note that is signed and

3        dated by you or by calling my chambers -- and we'll give you

4        the phone number for the chambers when you return on Thursday.

5        And a court employee can pick up the note from you.

6              Now, you have gone through the voir dire process as well

7        as our orientation downstairs.  You have heard the preliminary

8        instructions.

9              And now you are going to be taking a break before we

10       actually proceed with the opening statements and the evidence

11       in this case.

12             As I told you downstairs, we will do that starting on

13       Thursday morning at nine o'clock.  So, you will all need to

14       gather in the jury assembly room before nine o'clock on

15       Thursday so we can start promptly at 9:00 on Thursday.  And we

16       will be continuing on Thursday and Friday, and then starting

17       again next Tuesday morning.

18             And is there anything that I need to discuss with counsel

19       before I excuse the jury for the day?

20             MS. VARGAS:  No, your Honor.

21             MR. MOORE:  Nothing for the defendant, your Honor.

22             THE COURT:  Very good.  Thank you very much for your

23       time and attention this morning.  Enjoy the rest of your day.

24       You have the day off from court tomorrow.  And I will see you

25       again at 9:00 in the morning on Thursday.  Thank you.

1          We're in recess.

2          (Jury out at 11:38 a.m.)

3          THE COURT:  Now, anything we need to discuss outside

4     the presence of the jury before I begin preparing for my

5     hearing tomorrow?

6          MS. VARGAS:  Your Honor, if I could, I guess, make a

7     motion to preclude the defense counsel from discussing the

8     details of his disability during the course of this trial.

9     This trial is not about him.  And any efforts to discuss the

10    circumstances relating to his own disability would prejudice

11    the jury or would be an improper attempt to seek sympathy from

12    them or change their views of the case.  I would suggest I

13    won't discuss my personal business, that Mr. Moore not discuss

14    his personal business.

15         THE COURT:  It's apparent to the jury that Mr. Moore

16    is in a wheelchair.  And I don't think there was anything that

17    Mr. Moore said that would be likely to prejudice the jury.

18    But Mr. Moore, I doubt there's going to be any need for you to

19    make further references to your history.

20         MR. MOORE:  I mean, I don't think so.  Lawyers are

21    allowed to -- I mean, I am who I am, you know, if -- yeah, I

22    would never use that to try to influence the jury, let's put

23    it that way.

24         But, there was -- I guess it's a reference to a person

25    who is a quadriplegic, and I was just mentioning my

1     disability.  I don't intend to use it in any manner, but I

2     can't promise the Court I'll never say anything about me

3     through the trial.

4          So -- but, yeah, I certainly never intended to and would

5     never use it to try to influence the jury.

6              THE COURT:  The comments made during voir dire

7     frankly were not out of the ordinary from what I've heard

8     other lawyers mention during voir dire.  Sometimes they do

9     tell the jury a little bit about themselves.

10         But that's probably going to be unnecessary from this

11    point forward, so I will grant your motion.

12         Anything further?

13             MS. VARGAS:  Thank you.

14         One further question, it's more housekeeping.  What time

15    will court be concluding each day?  If we have a witness who

16    finishes at four o'clock, should we plan to bring somebody

17    right on, or how would you like to handle those kinds of

18    concerns?

19             THE COURT:  Obviously I want to make the best use of

20    the Court's time and the jury's time and everyone's time.

21         Don't ever feel that you need to stretch a witness to

22    fill up time because you don't have a witness ready to come in

23    for the rest of the day.

24         I have seen lawyers do that when judges have said, well,

25    unless you have the next witness ready, you're out of here.

1    We don't do that.

2         So I would just ask for the lawyers to cooperate with

3    each other and to get their witnesses lined up in such a

4    manner that it uses the jury's time to the best benefit.

5         I had told the jury that our usual day will be starting

6    at nine o'clock in the morning, take a mid-morning break

7    probably around 10:30, 15-minute break; they'll always get an

8    hour for lunch; now and then, they get longer because

9    sometimes my staff schedules in a one o'clock hearing on the

10   schedule.  We'll have a mid-afternoon break, and we will plan

11   to stop promptly at five o'clock each afternoon.

12        We do that out of a courtesy to the jury and to staff;

13   also because our courthouse security tends to leave -- well,

14   they do leave at 5:30.  And the parking garages also close

15   down not long after that.

16        So I don't want to go past five o'clock.  Certainly if

17   you have somebody on the stand and it takes five minutes to

18   wrap it up, we may wrap it up.  If your testimony ends at 4,

19   I'd like to use that next hour.  I would like to keep the case

20   moving along, but that's about as much guidance as I can give

21   you.

22             MS. VARGAS:  The one situation I'd like to just bring

23   to the Court's attention is that a hostile witness for

24   plaintiff, one of the defendant's former employees, is not

25   available until Tuesday.  And so while we think that will fall

1    perfectly with the timing of the case, should we reach a point

2    Friday afternoon where we're ready to move on to him and he's

3    not available, we might ask the Court if we could end a few

4    minutes early out of deference to the fact that he's not

5    available.

6              THE COURT:  I'm a little confused about who this

7    person is hostile to -- he's hostile to the plaintiff or

8    hostile to Creighton?

9              MS. VARGAS:  Hostile to plaintiff.  Dr. Hansen was an

10   employee of Creighton University.  I understand recently he's

11   no longer employed by Creighton, but I understand from

12   communication with Mr. Moore he's not available until Tuesday.

13       And while I think that that's not going to be a problem,

14   if we reach a point where we've gone through all of our

15   witnesses except for Dr. Hansen, then he's not going to be

16   available Friday.

17             THE COURT:  So he is likely to be your last witness.

18   You are telling me you think you will have your case in

19   Thursday and Friday but for Dr. Hansen.

20             MS. VARGAS:  We think we're likely to have one or two

21   witnesses on Tuesday and rest on Tuesday.

22             THE COURT:  And Dr. Hansen will be one of those.

23             MS. VARGAS:  Yes.

24             THE COURT:  Thank you for letting me know that.

25        Anything further?

1          MR. MOORE:  Nothing from the defendant.

2          THE COURT:  Very good.  Thank you.

3      We'll see you on Thursday morning.

4

5      (Adjourned at 11:44 a.m.)

6

7

8

9      I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.

10

11      _/s Brenda L. Fauber_          7-21-14
   Brenda L. Fauber, RDR, CRR          Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25