IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MICHAEL S. ARGENYI, )
)
Plaintiff, ) 8:09CV341
)
vs. ) Omaha, Nebraska
) September 4, 2013
CREIGHTON UNIVERSITY, )
)
Defendant. )

VOLUME IX
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LAURIE SMITH CAMP
CHIEF UNITED STATES DISTRICT JUDGE AND A JURY

COURT REPORTER: Ms. Brenda L. Fauber, RDR, CRR
111 S. 18th Plaza
Suite 3122
Omaha, NE 68102
(402) 661-7322

Proceedings recorded by mechanical stenography, transcript produced with computer.

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFF:

Ms. Mary C. Vargas
Mr. Michael S. Stein
Stein Vargas Law Firm
P.O. Box 522
Emmitsburg, MD 21727

Ms. Dianne D. DeLair
Nebraska Advocacy Services
134 South 13th Street
Suite 600
Lincoln, NE 68508

Ms. Caroline E. Jackson
NAD and Advocacy Center
8630 Fenton Street
Suite 820
Silver Springs, MD 20910

FOR THE DEFENDANT:

Mr. Scott P. Moore
Ms. Allison D. Balus
Baird Holm Law Firm
1700 Farnam Street
Suite 1500
Omaha, NE 68102

(At 8:32 a.m. on September 4, 2013, with counsel for the parties present in chambers, the following proceedings were had:)

(Off-the-record discussion had.)

THE COURT: Let's go on the record.

At five o'clock yesterday afternoon, we received a question from the jury. It says, "Are we able to get a decision on question number 1 with a majority instead of a nine-juror verdict? If not, what can we do?"

And we've had an off-the-record discussion with counsel. Both sides are agreeable to a response to the jury that would indicate that the parties are willing to accept a verdict of eight jurors. The parties will then -- the lawyers will then consult with their clients to determine whether they will accept a verdict of fewer jurors in anticipation of a hung jury.

Anything that the lawyers want to say on the record at this point?

MR. MOORE: Can you read the question?

THE COURT: Yes. "Are we able to get a decision on question number 1 with a majority instead of a nine-juror verdict? If not, what can we do?"

Now, as you know in the instructions I do tell them don't tell anyone including me where your numbers stand. So I can't necessarily infer from this that it's split 5/6. It could be

a different split.

MR. MOORE: The only thing I would recommend is, "if not, what can we do," I think that's a question to which the Court could respond that they could consider going to number 2.

MS. VARGAS: And the plaintiff would object to that. Obviously we filed claims that we would like the jury to decide and our claims are beginning with question 1, and those are the claims we would really like answers to.

One issue that occurs to me as with Mr. Moore's issues -- it may be that it's too late -- whether there's a way to use the same verdict form but bifurcate out year one versus year two of medical school. I don't know if that complicates things or not. That's just something that popped into my head as a possible alternative.

MR. MOORE: We wouldn't agree to that, so...

THE COURT: Frankly, I doubt that would be helpful for them.

Well, then we will -- I will respond indicating that the parties will accept a verdict of eight jurors. And then you can be thinking about what the next step will be if they can't get eight.

All right. We're off the record.

(Off-the-record discussion had.)

(Adjourned at 8:43 a.m.)

(At 11:53 a.m. on September 4, 2013, with counsel for the parties present, the following proceedings were had:)

(Off-the-record discussion had.)

THE COURT: Let's go on the record since we have Brenda here.

We have had an off-the-record discussion regarding the fourth question series from the jury. And the first question is: Can we use the eight-juror verdict in all questions? And my response to that is: Yes.

The next question is: Can you clarify question number 4 and also instruction number 15? Can you provide additional information or reword it?

My response is: No, you must follow the instructions as provided.

And third, they ask: Can we also award damages if there was no intentional discrimination? And my response will be: You must follow the instructions and the steps set out in the verdict form.

Any comment by counsel for the record?

MS. VARGAS: Not from the plaintiff, your Honor.

MR. MOORE: None from the defendant.

THE COURT: All right. I will let you know when we have another question or a verdict.

Thank you.

(Adjourned in chambers at 11:59 a.m.)

(At 1:15 p.m. on September 4, 2013, with counsel for the parties and the plaintiff present, and the jury NOT present, the following proceedings were had:)

THE COURT: We have been informed that the jury has reached a verdict. And is there anything we need to discuss before I call the jury in?

MS. VARGAS: Not from the plaintiff, your Honor.

MR. MOORE: Nothing from the defendant, your Honor.

THE COURT: Very good. Please bring in the jury.

(Jury in at 1:16 p.m.)

THE COURT: Please be seated.

At this stage of the proceedings, we usually refer to the jurors by juror number. One of the reasons for that is because sometimes in a criminal action, the jurors don't want to be referred to by name at the end of the proceedings.

Because this is a civil case, and because I'm going to be identifying certain jurors to ensure that we make a record regarding which jurors are members of the eight-juror majority, I will be referring to you by name as well as juror number.

And Mr. Stewart, Juror No. 360, were you selected as the foreperson of this jury?

FOREPERSON: Yes.

THE COURT: And did the jury reach a verdict by a majority of eight?

FOREPERSON: Yes, we did.

THE COURT: Very good. And among those eight, was that verdict unanimous?

FOREPERSON: Yes.

THE COURT: I'm going to now go by juror name and number and identify the eight who were members of the majority so that we have that clear.

And Juror No. 84, Mr. Lines, were you a member of that majority?

JUROR LINES: Yes, I was.

THE COURT: And Juror No. 90, Mr. Mruz, were you a member of that majority?

JUROR MRUZ: No.

THE COURT: Juror No. 413, Ms. Plambeck, were you a member of that majority?

JUROR PLAMBECK: Yes.

THE COURT: Mr. Focht, Juror No. 73, were you a member of that majority?

JUROR FOCHT: Yes.

THE COURT: Juror No. 281, Ms. Sautter-Wagner, were you a member of that majority?

JUROR SAUTTER-WAGNER: Yes.

THE COURT: Juror No. 324, Ms. Chavez, were you a member of that majority?

JUROR CHAVEZ: No.

THE COURT: And I will ask the foreperson, were you a member of the majority?

JUROR STEWART: Yes.

THE COURT: That was Mr. Stewart, number 360.

Mr. Cordoba, number 154, were you a member of the majority?

JUROR CORDOBA: Yes.

THE COURT: And Juror No. 192, Mr. Connelly, were you a member of the majority?

JUROR CONNELLY: Yes.

THE COURT: Mr. Cobb, number 92, were you a member of the majority?

JUROR COBB: No.

THE COURT: I missed someone, didn't I? I'm sorry. Mr. Ponce, Juror No. 201, were you a member of the majority?

JUROR PONCES: No, your Honor.

THE COURT: I will now --

MR. MOORE: Your Honor, that's four nos.

THE COURT: Okay. So we have -- let's count again. And I will keep tabs this time, because this is important.

All right. Mr. Lines, Juror No. 84, were you a member of the majority?

JUROR LINES: Yes.

THE COURT: Juror No. 90, Mr. Mruz, were you a member of the majority?

JUROR MRUZ: No.

THE COURT: Juror No. 413, Ms. Plambeck, were you a member of the majority?

JUROR PLAMBECK: Yes.

THE COURT: Juror No. 73, Mr. Focht, were you a member of the majority?

JUROR FOCHT: Yes.

THE COURT: Juror No. 281, Ms. Sautter-Wagner, were you a member of the majority?

JUROR SAUTTER-WAGNER: Yes.

THE COURT: Juror No. 324, Ms. Chavez, were you a member of the majority?

JUROR CHAVEZ: No.

THE COURT: And the foreperson, Mr. Stewart, Juror No. 360, were you a member of the majority?

JUROR STEWART: Yes.

THE COURT: Juror No. 154, Mr. Cordoba, were you a member of the majority?

JUROR CORDOBA: Yes.

THE COURT: Juror No. 192, Mr. Connelly, were you a member of the majority?

JUROR CONNELLY: Yes.

THE COURT: Juror No. 201, Mr. Ponce, were you a member of the majority?

JUROR PONCE: No, your Honor.

THE COURT: And Juror No. 92, were you a member of the majority?

JUROR COBB: Yes. I answered wrong the first time.

THE COURT: I confused you, probably, because I skipped over Mr. Ponce there.

So we have one, two, three, four, five, six, seven, eight in the majority. That makes that a little easier.

Let's go back to the foreperson then. And Ms. Frahm, will you please retrieve the verdict form.

Very good. Will you please publish the verdict.

COURTROOM DEPUTY: In the United States District Court for the District of Nebraska, Michael S. Argenyi, Plaintiff, versus Creighton University, Defendant; Case Number 8:9CV341.

Number 1: With respect to Michael Argenyi's ADA Rehabilitation Act claim as submitted in instruction number 7, we, the jury, find Michael Argenyi has met his burden of proof.

Number 2: With respect to Creighton's affirmative defense of undue burden as submitted in instruction number 13, we, the jury, find Creighton has not met its burden of proof with respect to its affirmative defense of undue burden.

Number 3: We, the jury, find in favor of Michael Argenyi.

Number 4: With respect to Michael Argenyi's claim that

Creighton intentionally discriminated against him as submitted in instruction number 15, we, the jury, find Michael Argenyi has not met his burden of proof.

Signed and dated by the foreperson.

THE COURT: On behalf of the court, I want to thank all of you for your time and attention and very hard work over the last three weeks. I realize this was a bigger case than you had anticipated getting into. It took longer than we all had anticipated. I know the deliberations weren't easy.

I think that everyone here is very grateful for your service and hard work and diligence.

And so, on behalf of the court, all I can give you is my hardy thanks and my handshake when I come into the jury deliberation room in a couple of minutes.

You are now excused. You do not need to call back in to the clerk's office for any further instructions. And if you wish to wait back in the room for a minute or two, I will come back and visit with you and thank you personally.

I see one of the lawyers standing. It appears that there's something that we need to address before the jury leaves.

Ms. Vargas?

MS. VARGAS: Your Honor, I would ask that you poll the jury specifically with respect to what exposure they may have had over the weekend to articles that may have appeared

in the Omaha World-Herald that they may have seen.

THE COURT: Do you wish me to poll them individually?

MS. VARGAS: Yes, please, your Honor.

THE COURT: Juror No. 84, Mr. Lines, did you have any exposure to any publicity involving this case prior to your deliberations?

JUROR LINES: No.

THE COURT: Mr. Mruz, Juror No. 90, did you have any exposure to pretrial -- publicity about this case prior to your deliberations?

JUROR MRUZ: No, your Honor.

THE COURT: Juror No. 413, Ms. Plambeck, did you have any exposure to publicity regarding this case prior to your deliberations?

JUROR PLAMBECK: No.

THE COURT: Juror No. 73, Mr. Focht, did you have any exposure to publicity concerning this case prior to your deliberations?

JUROR FOCHT: No, I did not.

THE COURT: Ms. Sautter-Wagner, Juror No. 281, did you have any exposure to any publicity regarding this case prior to deliberations?

JUROR SAUTTER-WAGNER: No, I did not.

THE COURT: Juror No. Chavez, No. 324, did you have any exposure to any publicity regarding this case prior to

deliberations?

JUROR CHAVEZ: No, I did not.

THE COURT: Juror No. 360, Mr. Stewart, did you have any exposure to any publicity regarding this case prior to your deliberations?

JUROR STEWART: No.

THE COURT: Juror No. 154, Mr. Cordoba, did you have any exposure to publicity concerning this case prior to your deliberations?

JUROR CORDOBA: No.

THE COURT: Juror No. 192, Mr. Connelly, did you have any exposure to any publicity concerning this case prior to your deliberations?

JUROR CONNELLY: No, your Honor.

THE COURT: Juror No. 201, Mr. Ponce, did you have any exposure to any publicity concerning this case prior to your deliberations?

JUROR PONCE: No, your Honor.

THE COURT: And Juror No. 92, did you have -- Mr. Cobb, did you have any exposure to any publicity concerning this case prior to your deliberations?

JUROR COBB: No, your Honor.

THE COURT: Anything further?

MS. VARGAS: Not for -- for the Court, yes, but not with respect to the jury. Thank you.

THE COURT: Anything further for the jury?

MR. MOORE: No, your Honor.

THE COURT: Thank you very much. And I need to meet with the lawyers for a couple of minutes, and then I'll be back to thank you personally if you wish to wait.

Thank you.

(Jury out at 1:28 p.m.)

THE COURT: Please be seated.

Ms. Vargas?

MS. VARGAS: Thank you, your Honor.

My question for the Court is at this point how the Court will handle injunctive relief.

The plaintiff, as I understand it, was the prevailing party on the elements of the claim that we have bearing on Mr. Argenyi's future, his ability to go forward as a medical student, so we would certainly be pressing those claims to the Court and asking that he be given that opportunity.

We would also move for reimbursement for the funds that he paid for the costs of accommodations that the jury determined were necessary and not an undue burden. Under Supreme Court precedent of the United States that is equitable relief and that is within the Court's jurisdiction.

And so we would ask that perhaps a hearing be set to determine those injunctive matters that remain before the Court and fundamentally are of the greatest importance to our

client.

THE COURT: As we know, the injunctive relief issue remains with me. The Court is very motion-driven. Things happen when the motions are filed.

So, all I can tell you is that in order to get injunctive relief rolling and properly briefed and before the Court and ripe for determination, a motion would be advisable.

At this point I don't know what injunctive relief specifically the plaintiff is seeking. So, it would be inadvisable for me to reach out on my own and speculate as to what injunctive relief is appropriate until there's a motion requesting specific injunctive relief.

I don't know at this point if the plaintiff wants to go back to medical school. I don't know if he wants to go back to medical school at Creighton. I don't know when he wants to go back to medical school. And I don't know what accommodations he's requesting.

There was also discussion earlier about the difference between damages and equitable restitution and whether an issue of damages should go to the jury or whether certain expenses would be viewed as equitable restitution in the province of the Court. And the parties may flip their positions now. Who's arguing what side of that, I don't know. But, we'll see. And if that comes before me, I will bone up on the difference between damages and equitable restitution.

So, that's my advice for you is to be cognizant of the fact that the Court is very motion-driven. Things happen after motions are filed.

MS. VARGAS: Could your Honor advise the parties what an appropriate deadline might be for filing such a motion for injunctive relief?

THE COURT: Well, we will not actually be issuing a judgment in this case because the case isn't done yet. It is -- well, I'm flexible about when you would like to brief the matter -- file a motion and brief it. You've worked pretty hard the last month or so, longer than that. You might want a little break. You might want a short vacation. That's totally understandable. So I'm not going to put a short fuse on your motion.

Ms. Vargas, how much time would you like to get your motion on file?

MR. MOORE: Your Honor, may I just ask one question? Would the Court be deciding injunctive relief before post-trial motions from the other side? I don't know if my client is inclined to file motions for relief from the jury's verdict. But I assume that's something that we have 30 days to file. So...

THE COURT: And --

MR. MOORE: I don't know if you can give relief from that or not with regard to the injunctive relief.

THE COURT: And there are pros and cons both ways. I'm happy to address the post-trial motions first, then injunctive relief, and then have a final judgment entered.

So, you were doing a pretty good job starting to talk with each other as the trial has gone on...

MR. MOORE: We're on a panel down in Phoenix together in two weeks. So Mary and I will continue to talk.

THE COURT: You're going to communicate? That's very good.

What is your preference? If you both can agree, that makes it simple for me.

MR. MOORE: I mean, what --

(Off-the-record discussion had.)

MR. MOORE: Do the post-trial motions and then do the injunctive relief, that makes sense. I'm not sure again if my client will file any post-trial motions.

THE COURT: Let's just say that after post-trial motions are ruled upon, the parties will have -- well, you're the only one who is going to be asking for injunctive relief, the plaintiff.

So the plaintiff will have 30 days from the time that the Court rules on the post-trial motions to file any motion and supporting brief regarding injunctive relief. If you want to do it sooner, you're welcome to do it sooner, as long as the ruling has been made on post-trial motions.

And then we'll have the responsive brief and reply, it will become ripe, and I will rule in due course.

MS. VARGAS: Thank you, your Honor.

MR. MOORE: Very good. Thank you, your Honor.

THE COURT: Anything further?

MR. MOORE: Nothing.

MS. VARGAS: No.

THE COURT: Thank you very much.

(Adjourned at 1:40 p.m.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s *Brenda L. Fauber*
Brenda L. Fauber, RDR, CRR

7-21-14
Date